## BURT vs. GWINN.

APPEAL from *Baltimore* County Court. *Assumpsit* brought by the endorsee, (now appellant,) against the sur-

Where a variety of contested facts were laid before the jury, and on consideration of them they had to decide whether a promissory note had been tainted with usury in its inception or negotiation, it is not for the court to advise them as to the conclusions they are to draw the one way or the other.

It is sometimes the duty of the court to decide this law upon facts, but it is after they are well ascertained by admissions or otherwise, and not while they are unsettled between the parties.

If a note is drawn to borrow money at a legal interest, and the holder obtains money on it on a usurious consideration, the note is under any circumstances void. But if the note is *bona fide* in its origin, an innocent holder without notice may recover on it, though it may have been subsequently passed upon a usurious consideration.

Whether a note drawn to borrow money is usurious and void in its inception, because money has been obtained on it by the holder on a usurious consideration, although the drawer, at the making the note, has no knowledge that such a use was to be made of it? *Quere.*

Although the declarations of a merchant's clerk made to a notary public in the course of business, may be used as evidence for some purposes, they cannot be so used to establish a fact not immediately connected with the solemnity of protesting.

Where a part of the testimony of a witness was "that the sum of £150 retained by W, *as he the witness understood and presumed*, was about the sum intended to be charged for discount upon the said note"—*Held*, that the expressions, "as he the witness understood and presumed," taken alone and unconnected by others used by him, imported his opinion, and were in themselves inadmissible evidence; but that as they could not be separated from the other part of the testimony without doing more mischief than the retaining them would do, they were admissible evidence.

Held by *Baltimore* county court, that the payee of a promissory note is a competent witness, in an action on it by the holder against the maker, to prove that the plaintiff was the holder of the note, and had paid him the full value thereof before the note became due, and that the note was not deposited in the bank by him the witness, nor for his use, and that it was endorsed by him to the plaintiff by his writing his name upon it at the time of the delivery thereof by him to the plaintiff,

viving drawer, (the appellee,) of a promissory note. The declaration contained the usual counts, and the general issue was pleaded.

1. At the trial the plaintiff gave in evidence the following promissory note:

"*Baltimore*, 6th March, 1813.

Dollars 4750. Sixty days after date we promise to pay to *John Wallis*, Junr. or order, negotiable at the Bank of *Maryland*, forty-seven hundred and fifty dollars and —— cents, for value received.

*Chs. Gwinn, & Co.*"

Endorsed—"Pay the contents to *Andrew Burt*, or order, *John Wallis*, Junr."

This note, it was admitted, was made and signed by *Charles Gwinn*, the defendant, on behalf of himself and *William Smith*, trading under the firm of *Charles Gwinn* and Company, and that the defendant had survived *Smith*, who died before the institution of this suit; and that the name of *John Wallis*, junior, endorsed thereon, was in the proper hand-writing of said *Wallis*, and that the words "Pay the contents to *Andrew Burt*, or order," were written above the name of *John Wallis*, junior, on the back of the note, at the trial of this cause. The defendant then gave in evidence that the note was made and signed by *Charles Gwinn* and Company, as aforesaid, on the 6th of May 1813, and not on the 6th of March 1813, as the same purports to have been signed; and that the latter date was inserted in the note by mistake. That the note was given and signed at the instance and request of a certain *Joshua Dorsey*, to whom it was delivered on the 6th of May 1813, and upon the express stipulation and agreement that *Dorsey* would on the same day deliver into the hands of *Charles Gwinn* and Company, 300 bags of coffee, as a security for the payment of the said note at maturity, and to indemnify them against all loss on account thereof. He further gave in evidence that the 300 bags of coffee were not delivered to *Gwinn* and Company on the 6th of May 1813, or at any time since, and that they did not then, or at any time since, receive any consideration for the note. He also gave in evidence. that the note was drawn in blank, and was delivered to *Joshua Dorsey*, without the name of any payee being inserted therein, and that *Dorsey*, on the next day after the issuing of the note, applied to *John Wallis*, junr. for a loan of money, but could not obtain it; that *Dorsey*, however, in answer to the said application, received a letter from *Wallis*, stating that he, *Wallis*, would discount any good paper upon which *Dorsey* might wish to raise money. That *Wallis* had sometimes offered notes at different banks for the purpose of having them discounted for the use of *Dorsey*, and in such instances where the bank did discount them, *Wallis* paid over the net proceeds to *Dorsey*, only deducting the bank discount. That the business of *Dorsey* brought him and

*Wallis* together almost every day upon money negotiations. That in consequence of *Wallis's* letter, stating that he could discount any good notes, *Dorsey* called on him with the note of *Charles Gwinn* & Co. when he found him very much indisposed, and out of humour, and disposed to reproach *Dorsey* for disturbing him. *Dorsey* informed him of his necessities, when after some hesitation he filled a check for $4000 on the *Mechanic's Bank*, and counted out $600 in bank notes, with which *Dorsey* retired. That no conversation, or contract or agreement whatever took place at the time of the transaction as to any discount which was to be deducted, legal or illegal, but that the foregoing statement is a complete detail of what did pass. That he *Dorsey*, the witness by whom these facts were proved, did not recollect any conversation that passed as to the note being offered for discount at the *Marine Bank*, but that he would not be understood to swear positively that such a conversation did not pass, as his situation at that time was such, and the haste in which the whole transaction took place, as prevented him from charging his memory so as to swear positively as to any fact further than is above stated. That the sum of $150, which was retained by *Wallis*, as *Dorsey* understood and presumed, was about the sum intended to be charged for discount upon said note, which sum was left in the hands of *Wallis* as discount or interest by *Dorsey*. That there was no contract or agreement whatever between *Wallis* & *Dorsey* for the return of the $150 to *Dorsey*; that *Dorsey* at the time was not in debt to *Wallis*; that *Wallis* had often discounted notes for *Dorsey*, sometimes at legal, and sometimes at usurious interest. That had not his circumstances terminated disastrously soon after this transaction, he would have called upon *Wallis* to know upon what account he retained the $150, and would have required a settlement as to that item. That although no notes were actually due by *Dorsey* to *Wallis*, at the time of this transaction, that *Wallis* held notes for, and upon which *Dorsey* was responsible, (which, however were not at maturity,) to a considerable amount of money, and particularly upon a premium insurance note which might have been, and he believes was issued by *Wallis*, for a part of which *Dorsey* was liable, although the note was not due. That the whole sum of money due by *Dorsey* at the time of his misfortunes, to *Wallis*, was due upon mercantile transactions between them prior to his failure; and that *Dorsey* is now indebted to *Wallis* in a large amount. That he did not communicate to *Wallis*, nor did *Wallis* inform him, or state his impression, that the $150 should be retained as a premium for lending the money; that his impression that it was an illegal premium was derived from the facts herein before stated, and that there was no contract between him and *Wallis*, that he *Wallis* should keep the $150 for discounting the said note. The defendant also offered evidence to prove, that when the said note become due he was called upon for payment thereof by a notary public, under the di-

rection of the *Union Bank of Maryland,* and that when the said note was so put in the hands of the notary, and when the same became due, and payment thereof was demanded as aforesaid from him, neither the name of *Wallis* as payee, nor the name of any other person, was inserted in the body of the note, but that remained in blank, and was endorsed with the name of *Wallis,* and no other person. That when the note was put in the hands of the notary public by the bank for protest, the notary called at the compting house of *Wallis,* who was sick, and not there, but that he saw the clerk of *Wallis,* and informed him that the note had laid over at bank, and that he came to give notice of its non-payment by the drawers, and that it would be protested; that the clerk informed him that *Wallis* had left express directions that it should be protested. That the note came to his hands through the runner of the bank, who usually carried notes to the notary, and whose duty it was to carry the notes. That on the day on which he was on his way to the bank to return the note, he called on *Wallis* at his lodgings, and told him that the note was protested; that the only expression made by *Wallis,* in answer to the fact of the protest, was an inquiry by him (which appeared to be made with some degree of surprize,) why it was protested—that he did not want it protested. That the said note was protested in the manner as appears in the notarial protest produced, which the defendant offered in evidence, viz. That the notary on the 8th of May 1813, "exhibited the said original promissory note unto one of the partners of *Charles Gwinn* & Co. (the makers of the same,) and demanded payment of the contents thereof, the time limited therein for payment having elapsed. Whereupon the said partner answered, that said note would not be paid, and required the following reasons to be inserted: First, this note for $4750 is not due for 60 days to come. It was issued on the 6th of May, the day before yesterday, and which day it was to be dated. Secondly, the coffee for which this note was given in part is not delivered. And lastly, the holder was informed of this circumstance, and that the note would be corrected and settled the moment the merchandize was in hand, and until then will not be paid, all of which *John Wallis* was then advised of, and regular vouchers in the hands of *Charles Gwinn.*" That at the time the note was delivered to the notary for protest, there was no appearance of any pencil mark in the name of any person upon the back of the note. The defendant further gave in evidence by *Ralph Higginbotham,* (Cashier of *The Union Bank of Maryland,)* that according to the established usage and custom of banks in the city of *Baltimore,* and of the *Union Bank,* the last endorser on a promissory note, deposited in bank for collection, is considered as the holder and owner thereof, and the person for whose use and benefit the same is to be collected, and to whose credit the same is carried when paid. The plaintiff then gave in evidence by the same witness, that the

name of *Andrew Burt*, the plaintiff, was at the time, and before the note became due, endorsed in pencil on the back of the same; that although it is not the usual practice of the bank to admit endorsements in pencil, yet it is frequently done in cases considered as cash transactions, which the witness considers the present; that if the note had been paid by the defendant, the money would have been paid over by the bank to the plaintiff, whom the bank, according to the common usage in such transactions as the present, considered the holder and proprietor of the note, and to whom alone it would have been paid; that this transaction was not a regular bank transaction, or one appearing on the face of the books of the bank, but was a private cash transaction of *Burt* with *Wallis*. The plaintiff further gave in evidence, (by the witness by whom the defendant proved that the said note was written and delivered on the sixth day of May,) that the inserting therein the sixth day of March was done through mistake, and that when *Dorsey* applied to *Wallis*, and obtained from him the said sum of $4600, *Wallis* was lying very sick; that he complained much of being disturbed by the application of *Dorsey*; that there was no agreement made between *Dorsey* and *Wallis*, that *Wallis* should receive or retain any larger sum than legal interest, nor any conversation upon that subject. That the transaction took place in haste in consequence of the illness of *Wallis*. That when the said note was put into the bank for collection, it was endorsed with a pencil with the name of the plaintiff, and was the property of the plaintiff, and was by him put into the bank for collection; and that the day on which the note became due the defendant called at the *Union Bank of Maryland*, of which *Ralph Higginbothom* was cashier, and desired to see the note; that *Higginbothom* handed him the note; that the defendant said that there was a mistake in the date of it, and that if the note had been properly dated, he the defendant could have had no objection to pay it; that *Higginbothom* advised him to lodge the amount of the note in bank, as a bar against the protest, which would be made unless it was paid, (and as is usual in case of notes in dispute,) to guard against loss of credit by a protest. And that from the whole conversation, *Higginbothom* was under a *persuasion* when the defendant left the bank, that that course would be adopted. The plaintiff then, having executed a release to *Wallis* of all actions, liability, &c. produced *Wallis*, and offered to prove by him that the plaintiff was the holder of the said note, and had paid him the full value thereof before it became due, and that it was not deposited in the bank by him, *Wallis*, nor for his use, and that it was endorsed by *Wallis* to the plaintiff by *Wallis's* writing his name upon the back of it at the time of the delivery thereof by him to the plaintiff. The defendant objected to *Wallis* being sworn as a witness to prove the above facts. But the Court, [*Bland*, A. J.] was of opinion that he was a com-

petent witness, and he was accordingly sworn. The defendant excepted.

2. And thereupon *Wallis* being examined, gave in evidence that he received the note from *Dorsey* on the 6th of May 1813, dated March 6th, 1813, payable sixty days after date to ——, or order, and that he *Wallis* advanced to *Dorsey*, $4600 on the said 6th of May, and informed *Dorsey* that he would that day put the said note in the *Marine Bank of Baltimore* for discount, and would pay him the balance on the next day if he would call; that the said note was not discounted at the *Marine Bank*, on account of its having but a few days to run at the time it was so offered for discount; that when said note was so refused to be discounted at the *Marine Bank*, for the cause aforesaid, he *Wallis* received information from said bank, that if he would procure a note from *Charles Gwinn* and Company, payable at sixty days, it would be discounted, of which he sent to inform *Dorsey*, but understood that he had failed and was not to be seen by the clerk who was sent; and that *Wallis* endorsed said note before it was due, delivered it to the plaintiff, and received from him the whole amount mentioned in said note, without informing him of any of the circumstances concerning the manner in which he received it. That *Wallis* did not deposit said note in the *Union Bank*, nor was it to be collected for his use, nor was it protested at his instance or on his account, nor has he refunded any part of the amount of said note to the plaintiff; that the note was delivered by him to the plaintiff as the private property of the plaintiff, and not as teller of the *Union Bank*; that he *Wallis* had been in the habit of lending *Dorsey* money at legal interest, and frequently for several days without interest; that *Wallis* did not know at the time he received the said note, that it had not sixty days to run, nor did he know it till he sent it to be discounted at the *Marine Bank*, and received information therefrom as above mentioned; that it had but a few days to run, as he *Wallis* was very ill at the time he was as aforesaid applied to by *Dorsey* to advance him the money on said note; that *Dorsey* did not call on *Wallis* on the next day after the note was offered at the *Marine Bank*, nor at any other time, otherwise he *Wallis* would, after receiving the amount of the note from the plaintiff, have paid to *Dorsey* the balance of said note. That at the time *Wallis* advanced the money on said note, and at the time *Dorsey* failed, *Dorsey* was and still is largely indebted to *Wallis*. The plaintiff further gave in evidence, that it was and is the usage and custom of merchants, and of the different banks in the city of *Baltimore*, to discount notes drawn in blank. The plaintiff then prayed the direction of the court to the jury, that if the jury believed that the note was originally drawn by the defendant, and his late partner *William Smith*, in the manner the defendant offered in evidence, and that *Wallis* by endorsing and de-

livering the note to the plaintiff transferred it to the plaintiff for value before it became due, and that the plaintiff, at the time of the said delivery and endorsement, and paying value for the same, had no notice or knowledge of any mistake being committed in the date of the note, or of any negotiation between *Charles Gwinn* and Company, and *Dorsey*, or between *Dorsey* and *Wallis*, respecting the note, then the plaintiff was entitled to recover. Which direction the court refused to give to the jury, and gave this direction—That if the jury believed from the whole evidence that the object and intent was, at the time the note was drawn, to lend or to borrow money, and that the note was made and drawn for that purpose, and a loan of money was thereby obtained at a rate of interest of more than six *per cent per annum*, then the note was usurious in its inception, and void, and the plaintiff could not recover; but on the other hand if they believed from all the evidence that the note was made and passed *bona fide* by the defendant and his late partner, and that a subsequent holder passed it for a usurious consideration, to which the plaintiff was in no manner privy, then the plaintiff was entitled to recover. The plaintiff excepted.

3. The plaintiff further prayed the court to direct the jury, that there was no evidence from which they could find that the note was given by *Charles Gwinn* & Co. to *Dorsey*, upon a usurious consideration. Which direction the court refused to give. The plaintiff excepted.

4. The plaintiff further prayed the court to direct the jury, that there was no evidence from which they could find that the note was negotiable by *Dorsey* to *Wallis* on a usurious consideration. This direction the court refused to give. The plaintiff excepted.

5. The plaintiff further prayed the court to direct the jury, that if they believed the whole evidence in the cause, that then the plaintiff was entitled to recover. This direction the court also refused to give. The plaintiff excepted.

6. The defendant then offered in evidence, that *John Reece*, the clerk of the defendant, did at the defendant's request go to the dwelling house of *Wallis*, where he was confined from indisposition, and told him of the mistake that had been committed by the defendant in signing the note; which was antedated sixty days before its execution, and informed him that it was the desire of the defendant that he would correct the said mistake by altering the date to the true time, but that *Wallis* refused to make the said alteration, and said it should be protested in case it was not paid when it became due according to the existing date, and which reply the witness communicated to the defendant. The defendant then, in order to prove that

*Wallis* was the holder, and was at the time of its being protested the holder of the said note, offered to give in evidence that the notary, on the evening of the day when the note was put into his hands to be protested, went to the compting house of *Wallis*, who was sick and not there, but that he saw the clerk of *Wallis*, and informed him that the note lay over at bank, and would be protested; whereupon the said clerk informed him the notary that *Wallis* had left express orders that the note should be protested. To this evidence the plaintiff objected. But the court was of opinion that the evidence was proper and competent, and permitted it to be given to the jury. The plaintiff excepted.

7. The plaintiff then moved the court to direct the jury, that that part of the testimony of *Dorsey* in the *first* bill of exceptions, where he states *"that the sum of* $150, *retained by Wallis, as he Dorsey understood and presumed, was about the sum intended to be charged for discount upon said note,"* was illegal and inadmissible, and ought not to be given to the jury. This direction the court refused, and permitted said testimony to be given to the jury. The plaintiff excepted. Verdict and judgment for the defendant, and the plaintiff appealed.

The cause was argued in this court on all the bills of exceptions, except the *first*, before EARLE, JOHNSON, and MARTIN, J.

*Martin*, (Attorney General,) and *Taney*, for the Appellant. The *first* count in the declaration is on the note to *Wallis*, and by him endorsed to the plaintiff. The *second* on a note payable to bearer, and that the plaintiff became the bearer and holder; and the *third* count is for money had and received. They contended, on the *second* bill of exceptions, that if the note was *bona fide* in its commencement, then it could not be vitiated by any subsequent usurious dealings, as to an innocent endorsee, without notice. The omission to insert in the note the name of the payee, will not prevent it from being an efficient instrument from its first commencement. On such a note the holder may sue, and has a right to fill up the name of the payee, or to declare on it as a note payable to bearer. A note originally valid is not made void as to an innocent endorsee, without notice, by any usurious dealings between the parties interested in the note before it came to his hands. *Parr vs. Eleason*, 1 *East*, 93. *Chitty on Bills*, 109, (101,) 78, 79, (note 7) 103. *Gibson vs. Minet*, 1 *H. Blk. Rep.* 569; and *Collins vs. Martin*, 1 *Bos. & Pull.* 650.

On the *third* bill of exceptions. There was no consideration passing between *Gwinn* and *Dorsey*, and of course there could be no usurious consideration. By refusing the plaintiff's prayer the court below seemed to think there was evidence of usury between *Gwinn* and *Dorsey*.

1819.

Burt
vs
Gwinn

On the *fourth* and *fifth* bills of exceptions. To constitute usury there must be an agreement between the parties. It need not be in words. But here the whole evidence goes to show that there was no agreement between *Gwinn* and *Dorsey* which could look like a usurious consideration. If the jury believed the evidence, they could not find the transaction usurious. They referred to the act of 1704, *ch.* 69. Stat. 12 *Car.* II, *ch.* 13; and 1 *Harr. Ent.* 603.

On the *sixth* bill of exceptions. The declarations of *Wallis's* clerk were improperly admitted in evidence against the plaintiff. If he had been the plaintiff's clerk it would not have been different. The declarations of an agent not engaged in the immediate business of his principal, are not evidence. 1 *Phill. Evid.* 77, 78.

On the *seventh* bill of exceptions. The evidence of *Dorsey*, in the latter part of his testimony, was an inference of his own, and was not founded upon any fact—it was a mere matter of opinion; and if the fact did not justify the inference, it is not evidence. 1 *Phill. Evid.* 209. *Hoddy's Lessee vs. Harryman,* 3 *Harr. & M'Hen.* 581. *Davidson's Lessee vs. Beatty, Ibid* 594.

*Pinkney* and *Winder*, for the Appellee. The only question is, whether there is any evidence to prove the transaction to be usurious. If the court below were right in the opinion given, as stated in the *second* bill of exceptions, then it was wholly unnecessary for the court to give any other opinion in the case. The evidence is clear, that *Wallis* was the real holder of the note, and not the plaintiff. There was an attempt made to smuggle in the name of the plaintiff as an innocent endorsee, to free the case from the charge of usury. If A gives B a note, for the purpose of borrowing money on it, and B does borrow money at a usurious interest from C, it is usurious in its inception. *Bailey's Dig.* tit. *Usury,* 411. *Wilkie vs. Roosevelt,* 3 *Johns. Cas.* 66. If *Dorsey's* name had been filled up in the note, he could not recover from the defendant, there being no consideration. The first consideration was when the note got into the hands of *Wallis*, and that was usurious, and no subsequent endorsee without notice could recover on it. The note had no legal commencement until it was filled up with the name of *Wallis*, who furnished the consideration. It could not be looked upon as a legal note until the blank was filled up. The jury were the proper judges whether or not there was any usury in the transaction. The act of 1704, *ch.* 69, clearly covers a transaction like the present.

On the *third* bill of exceptions. It was wholly out of the case as to the consideration between *Gwinn* and *Dorsey*. *Dorsey* was considered as the agent of *Gwinn*, and the court were well justified in refusing to give the direction asked for in this bill of exceptions.

1819.

Burt
vs
Gwinn

On the *fourth* and *fifth* bills of exceptions. If the court had given the directions prayed for in these bills of exceptions, it would have been taking from the jury the decision of facts.

EARLE, J. delivered the opinion of the court. In this case there are several bills of exceptions in the record, the first of which, taken on the part of the plaintiff below, (being the *second* in the record,) contains all the material facts in the cause, and presents for consideration the principal subjects of controversy between the parties.

In this bill of exceptions the court below was called on to direct the jury, that if they believed the note was drawn by *Gwinn* & *Co.* in the manner they offered in evidence, and that *John Wallis* had transferred the same to *Andrew Burt* for value, before it became due, and that *Andrew Burt*, at the time of the endorsement to him, had no notice of any negotiation between *Charles Gwinn* & Co. and *Joshua Dorsey*, or between *Joshua Dorsey* and *John Wallis*, respecting the said note, that then the plaintiff, *Andrew Burt*, was entitled to recover. This direction the judge very properly refused to give, having a just regard, as we presume, to the rights of the jury, upon whose province he must have encroached if he had gratified the prayer of the plaintiff. A variety of strongly contested facts were laid before the jury, and on the consideration of them they had to decide whether the note had been tainted with usury in its inception or negotiation, and it was not for the court to advise them as to the conclusions they were to draw the one way or the other. It is sometimes the duty of the court to decide the law upon facts, but it is after they are well ascertained by admissions or otherwise, and not while they are unsettled between the parties. The court below expressed an opinion, however, to the jury, in which we entirely coincide, as it is understood by us. We suppose the judge only intended to say, that if the note was drawn by *Charles Gwinn* & Co. to borrow money at illegal interest, and the holder did accordingly obtain money thereby on a usurious consideration, the note was void, and the plaintiff could not, under any circumstances, recover on it; and on the other hand, that if the note was *bona fide* in its origin, the plaintiff might recover on it, provided he had no knowledge of its being subsequently passed upon a usurious consideration. Some broad expressions used in the first part of the opinion seem to militate against this construction of it, but when we think that the whole is considered together, and particular attention is bestowed on the latter part of it, the meaning we have ascribed to the judge is obvious. Thus understood, the opinion does not suggest the question discussed on the argument, "whether a note drawn to borrow money is usurious and void in its inception, because money has been obtained on it by the holder on a usurious consideration, although the drawer, at the making of the note, had no knowledge such a use was to be

made of it;" and the court do not mean to express any opinion on this point.

We are of opinion, that the court below was correct in refusing to direct the jury according to the plaintiff's prayers set forth in the *second, third* and *fourth* bills of exceptions, (being the *third, fourth* and *fifth* in the record.) The prayer in the *fourth* is as general as the prayer in the *first* bill of exceptions, and the *second* and *third* exceptions differ from them only in this, that the judge is required to direct the jury as to the question of usury on detached parts of the transaction, and not on the whole of it.

From the opinion of the judge expressed in the *fifth* bill of exceptions, (being the *sixth* in the record,) we dissent; and as to this point the judgment must be reversed. However the declarations of a merchant's clerk to a notary public in the course of business may be used for some purposes, they cannot be used in evidence to establish a fact not immediately connected with the solemnity of protesting. The defendant wished to prove that *John Wallis* was the holder of the note, and he proposed to do it by the admissions of *John Wallis*. This it was competent for him to do by correct and legal testimony, in which light we cannot consider the declaration of his clerk, not made on oath. Such declarations were yet more improper to discredit *John Wallis*, who was sworn as a witness in the cause. We must then view those declarations as inadmissible proof, and think the judge erred in suffering them to be laid before the jury.

We concur with the court below in the opinion delivered in the *sixth* bill of exceptions, (being the *seventh* in the record.) If all the expressions of the witness, *Joshua Dorsey*, objected to by the plaintiff, had been expunged from his testimony as detailed in the *first* bill of exceptions, what remained would have been wholly unintelligible, and if those most particularly objectionable, to wit, "as he *Dorsey* understood and presumed," had been erased, the witness would have been made to speak a language he never intended to utter. Remove those expressions and the testimony would read thus, "that the sum of $150, retained by the said *Wallis*, was about the sum intended to be charged for discount on the note," which evidence *Dorsey* never meant to deliver. Those last expressions of the witness taken alone, and unconnected with others used by him, import his opinion, and are in themselves inadmissible evidence; but the court cannot perceive how the judge could have separated them from the other parts of the testimony, without doing more mischief, than the retaining of them would have done.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.