STATE USE OF BARBER *vs.* PHILIP HAMMOND'S EX'RS.
*June,* 1834.

C on the the 6th January, 1819, gave his bond to B, with M as his surety. M died leaving R his executor, who in September, 1819, gave a testamentary bond with P as his surety. On the 21st April, 1823, two suits were docketed, and judgments entered by confession in the *Anne Arundel* county court in the name of B, one being against C and the other against R, as executor of M. These judgments were rendered the first day of the term, and on the declaration in each case, was endorsed as follows, "file this and enter judgment with a stay of execution for three years."—Signed S attorney for plaintiff, and W attorney for defendant. In an action upon R's testamentary bond against the executors of P, his surety (of which said executors R was one) brought for the use of B, to recover the amount of the aforesaid judgment against R as executor of M, the issues were so made up as to present the questions : 1st. Whether the stay of execution upon the judgment against C, was so entered with the consent of R as executor of M; and 2nd. Whether the stay of execution entered upon the judgment against R as executor of M, was entered with the consent of the executors of P. At the trial the plaintiff prayed the court to instruct the jury, that from the facts in the cause they *might infer* the consent of R to the stay given to C, which instruction the County Court refused, and upon appeal by this plaintiff, the refusal was held to be erroneous, and the judgment reversed and *procedendo* awarded.

The entry of a stay of execution on a judgment against a principal debtor, without the knowledge and consent of a surety is a discharge of the surety; or if done after the death of the surety, without the knowledge and consent of his executors, is a discharge of them.

A party to the suit has a right to have a jury instructed in reference to their proper sphere of action, and to have them told what was legitimately within their province as the triers of the issues submitted to them; and when a court refuses without qualification to instruct them as to what they may infer from the evidence, (being so required,) it is error.

Where a defendant has given bond for payment of debts and legacies of a deceased person whose executor he was, in an action against him as executor, he cannot plead *plene administravit* or *nulla bona*, and this, though the action is not founded upon the bond for such payment.   Per Anne Arundel County Court.

APPEAL from *Anne Arundel* county court.

This was an action of *Debt*, instituted November 5th, 1829, in the name of the *State*, for the use of *George Barber*, surviving obligee of *John T. Barber*, against the appellees, as the executors of *Philip Hammond*, one of the sureties in the testamentary bond of *Rezin Hammond*, as the executor of *Matthias Hammond*.

To the declaration which assigned a breach in the non-payment of a judgment recovered by the plaintiff against the aforesaid *Rezin*, as the executor of *Matthias*, the defendants pleaded. 1. *Plene administravit* of the assets of *Matthias*, by *Rezin*. 2. Payment by *Rezin*. 3. Payment by *Christopher L. Gantt*, the principal in the debt to *Barber*, for which *Matthias Hammond* was surety, and the same debt, for which the aforesaid judgment was recovered against his executor *Rezin*. 4. Time given to *Gantt* the principal debtor.   5 and 8. Time given to *Rezin Hammond* for whom as *Matthias*' executor, the appellees' testator, was answerable as surety.   6. *Plene administravit* by the appellees of the *assets* of their testator *Philip*.   And 7. *Nulla bona*.

Issues were joined upon the three first pleas.   To the 4th, 5th, and 8th pleas, the plaintiffs replied, that the time was given with the consent of *Rezin Hammond*, and of the defendants as the executors of *Philip Hammond*, and to these replications there were issues.

To the 6th and 7th pleas, being the pleas of *plene administravit* and *nulla bona*, by the defendants as executors of *Philip Hammond*, the plaintiff replied; that the defendants had given bond for the payment of all his just debts and legacies, which made them answerable for all debts, claims, and demands, recoverable against them as executors.

The defendants demurred generally to the replications to the last aforegoing pleas, and the plaintiff joined in demurrer. The county court (Dorsey, Ch. J., Kilgour and Wilkinson, A. J's,) decided the replications to be good, and overruled the demurrer.

1. At the trial of the issues upon the 4th, 5th and 8th pleas, the plaintiff offered in evidence two several judgments in *Anne Arundel* county court, on the same cause of action, at the suit of *Barber*, the *cestui que use* of this action, against *Christopher L. Gantt* and *Rezin Hammond*, as executor of *Matthias Hammond*, the surety of *Gantt*; each rendered on the 21st April, 1823, in actions docketed by consent on the same day, with a stay of execution for three years in each case, upon the following order to the clerk, written upon the back of the declarations.

"*Mr. Green*, file this, and enter judgment, with a stay of execution for three years.

*J. Shaw*, for Plaintiff.

*J. N. Watkins*, for Defendant."

He also proved, that at the time when the said order to enter the judgment in each case, and with the stay as aforesaid, was given, the said *J. Shaw* and *J. N. Watkins*, were attornies of the court, and their respective signatures were in their hand writing, and that the judgments are the same as those mentioned in the pleas. He also proved, that the said *Rezin Hammond*, the defendant in one of the suits, was one of the executors of *Philip Hammond*, against whose executors this suit is instituted, and contended, that the same was evidence to prove to the jury, that *Watkins* the attorney of record for the defendants in those causes, was authorised by the defendant, *Rezin Hammond*, to consent to the stay of execution in each case; and prayed the court to instruct the jury, that from the facts above stated, the jury might infer the consent of the said *Rezin Hammond* to the stay given to the said *Christopher L. Gantt*, as stated in the plaintiff's replication. The court refused the instruction, and the plaintiff excepted.

2. Upon the issue to the first plea of *plene administravit*, the plaintiff read to the jury the inventory of the personal estate of *Matthias Hammond*, returned by his executor *Rezin*, and four accounts settled by him with the Orphans court; the last of which passed on the 25th of March, 1831, exhibited a large balance in his hands.

The defendants then read to the jury the letters testamentary, which had been granted the said *Rezin* on the estate of *Matthias Hammond*, dated September 21st, 1819, and proved that on the 26th of August, 1820, the said *Rezin*, in puruance of the order of the Orphans court, gave the usual notice to the creditors of his testator, to exhibit their claims on or before the 26th day of February, then next. And they further proved, that in conformity with an order of the said court, passed on the 27th of February, 1821, on the petition of the said *Rezin Hammond*, appointing two persons to make distribution of the personal estate of the said *Matthias Hammond* amongst his representatives, that the same was distributed, and the proportion allotted to each duly delivered over to the person entitled. And the plaintiff offered no evidence, that the said *Rezin Hammond* had had any notice of the aforesaid claim of *Barber* the plaintiff, on which the judgment in the declaration in this cause mentioned was rendered, before the date of the said judgment on the 21st of April, 1823; but he proved by the records of the Orphans court, that when the distribution before mentioned of the personal estate of *Matthias Hammond* was returned to that court, that the following order was passed. "March 6th, 1821. Ordered by the court, that this distribution be confirmed, provided the residue of the personal property be sufficient to pay the debts." The plaintiff then proved, that subsequently to the order of the court for the distribution of the personal property of the said *Matthias Hammond,* and after the alleged distribution thereof by them, to wit, at April term, 1823, the judgment by *Barber* against *Rezin* the executor of *Matthias Hammond,* was obtained as stated in the pleadings in this cause. And

the plaintiff further proved, that at the time of the application of *Rezin Hammond,* and the order of the court thereon, for the distribution of the personal estate of *Matthias,* the said *Rezin,* his executor, had passed no account whereby it could appear that all the claims against the deceased, known by, or notified to his executor, had been paid, retained for, or settled. That an account of the funeral charges had not been allowed by, or exhibited to the said Orphans court, nor had any commission been allowed to the said executor. And the plaintiff's counsel contended, that the said proof was inadmissible to prove under any issue in this cause, that the said *Rezin Hammond* as executor as aforesaid, had fully administered the assets of his testator, and had no assets to discharge the aforesaid judgment in favor of the said *Barber,* and prayed the court to instruct the jury.

1. That if the said executor had paid away the assets in a due course of administration, before this claim was notified or exhibited to him, he ought to have pleaded the same to the action by *Barber* against him as executor, and that the confession of the judgment in that action, was an admission that he had assets in his hands sufficient to pay the claim.

2. That the distribution of the assets among the personal representatives of the testator, furnished no defence to the executor in the former, nor to the defendants in the present suit, forasmuch as the persons who are alleged to have made the distribution, had no legal authority to make the same, it not being made as directed by the act of 1798, *ch.* 101, or any law of this state; or in pursuance of any authority conferred by law upon the Orphans court, in making distribution of the surplus of a deceased estate.

And 3. That neither in the former suit, nor in the present, is it pleaded that the executor had no notice of this claim, before the distribution of the assets as aforesaid; and it is not incumbent on the plaintiff to prove when he gave notice of his claim.

The court gave the instructions prayed, and the defend-

ants excepted; but the verdict and judgment on the 4th, 5th, and 8th pleas being for the defendants, the record was brought before the court of Appeals upon the appeal of the plaintiff.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, and ARCHER, J's.

*Randall*, for the appellant.

The questions arise upon the 4th, 5th, and 8th pleas.

Upon the 4th plea the point is; whether there was evidence for the jury of the consent of *Rezin Hammond*, to the stay allowed on the judgment against *Gantt*, the principal debtor. The inference of consent, is fairly deducible from the existence of the judgment against him. He must be presumed to have consented that the judgment against him should be binding on himself, and available to the plaintiff; and he must also be presumed to have known in what manner and upon what terms, the judgment against his principal was rendered. These judgments were both confessed by the same attorney, and the defendants in each case are bound by his act, in which he is to be presumed to have acted by the authority of his clients. *Roscoe Ev.* 19, 30, 171. 1 *Johns. Dig.* 82. 2 *Stark. Ev.* 977. 4 *Campb.* 133. 2 *Powel on Mortg.* 583. 3 *Atk.* 34, 35. 4 *Russel*, 142. 3 *Eng. Ch. Rep.* 603. 5 *Ib.* 271. It is the duty of an attorney to disclose every thing to his client, which can influence his discretion, and in the absence of evidence to the contrary, he is to be supposed to have done so. 3 *Mason*, 418. The facts connected with these judgments show most clearly, that they were the result of one common consent and concert of action throughout, and every fair intendment should be made to support them.

The prayer of the plaintiff upon the facts was, that the jury *might* find the assent of *Rezin Hammond*, not that they *must* do so; and the court in refusing the prayer, necessarily created an impression on the minds of the jury, that it was not competent for them to find such assent. By refusing the prayer, the court decided upon the sufficiency of

the evidence, though its province was merely to decide its admissibility. If admissible at all, the court usurped the authority of the jury by deciding upon the effect of the proof. 5 *Harr. and Johns.* 478. 6 *Ib.* 478. 7 *Ib.* 36. 1 *Harr. and Gill,* 109, 321. 2 *Harr. and Gill,* 190. 2 *Gill and Johns.* 404, 419.

Upon the 5th and 8th pleas he insisted, that it was material to show, that *Rezin,* who was one of the executors of *Philip Hammond,* and the sole executor of *Matthias,* consented to the stay. This evidence was admissible to prove the whole issue upon the 4th plea, and supplied a material fact involved in the 5th and 8th pleas, and consequently was admissible under the issues growing out of those pleas.

The questions arising upon the demurrers to the plaintiffs replication to the 6th and 7th pleas are not before this court; the defendants not having appealed; but if they were, this court would not affirm the judgment, though it might be of opinion that the demurrers should have been ruled good, as by so doing the plaintiff would be denied the privilege of amending his replications.

*Brewer* and *Alexander,* for the appellees.

1. The first question is, whether the circumstances of this case are such, as would have justified the jury in inferring the consent of *Rezin Hammond* the surety, to the time given to *Gantt* the principal debtor. It is true the client is bound by the acts of his attorney, and consequently *Rezin Hammond* cannot gainsay the judgment against him, but it by no means follows that he consented to the judgment against *Gantt.* He is bound by the act of his attorney in his own case, but not by the act of the same attorney, in reference to judgments against other persons. 1 *Camp.* 140. If *Rezin Hammond* did consent to the stay of execution in the judgment against *Gantt,* that fact must have been in the knowledge of *Watkins,* the attorney, and as he was not called by the plaintiff, and is not shown to have been inaccessible to him, the presumption is against the existence

of the fact sought to be established.    But the court did not reject the evidence, although it refused to instruct the jury that they might find the assent of *Rezin.*    The court did not say, that the jury should not make the inference.    It merely expressed an opinion on the subject, and in doing so, did not trench upon the just authority of the jury. *Showers' Par. Cas.* 111.    9 *Petersd.* 142.    *Sir Thos. Ray.* 404.    If the court usurped the authority of the jury, it was the result of the course pursued by the plaintiff. It was he who asked for an instruction, and not the defendants, who made no objection to the admissibility of the proof.

The prayer of the plaintiff in this exception, is confined altogether to the issue upon the 4th plea, in relation to the assent of *Rezin Hammond,* to the time given to *Gantt.* Nothing is said about the consent, alleged to have been given by the executors of *Philip Hammond,* to the stay given to *Rezin,* which is the subject of the 5th and 8th pleas, which have no connection whatever with the 4th. If then the court erred in the particular instruction given; still, as there could have been no recovery in this case, without proving the consent of the defendants, the executors of *Philip Hammond;* and as no proof whatever was offered of such consent, it would be futile to send the record back for a new trial.    3 *Gill and Johns.* 472.

The jury found for the defendants upon the 5th and 8th pleas, which go to the merits of the controversy; and therefore, though the plaintiff may have been entitled to the instruction he prayed for upon the 4th plea, still the judgment will not be reversed, as that would be giving the plaintiff an opportunity of disputing the same merits before another jury.    The assent of *Rezin,* as one of the executors of *Philip,* would not be binding on the other executors. 1 *Strange,* 20.    2 *Ves. and Beam.* 51.    And besides, there is nothing in this exception to show that *Philip Hammond* was dead, when the judgments were rendered against *Rezin* and *Gantt.*

If however, the defendants are wrong in the points growing out of the exception, still this court will not send the record back if it should be with the defendants, upon the demurrers, as they present independent and substantial grounds of defence, and present an insuperable bar to the final success of the plaintiff.

The question on the demurrer is, whether the giving a bond for the payment of debts and legacies, precludes all inquiry, at all times, and under all circumstances, in relation to assets. If it can have any such effect at all, it must be only when the suit is brought on the bond itself, and not as here, where it is introduced collaterally, to rebut a defence set up by the plea. In a case like the present, where the executor is not the residuary legatee, and has paid over the *residuum* to the such legatee, in obedience to the order of a court of competent jurisdiction, it would be the extreme of hardship to deny him the benefit of the plea of *plene administravit*.

*Magruder*, in reply.

Executors who have given a bond for the payment of debts and legacies, cannot plead *plene administravit*, whether the suit is on the bond itself, or on any obligation of their testator. The act of Assembly which has not been repealed, forbids proceedings in the first instance upon the bond. Before the bond can be sued, there must be proceedings on the original cause of action, against the executors as such; and as, if they elect to give a bond for the payment of debts and legacies, they are not required to settle accounts with the Orphans court, the creditor may not be able to recover his whole claim, if the plea of *plene administravit* may be filed. This must unavoidably be the result, if the plea of *plene administravit* is good, except where the suit is on the bond itself, as is contended on the other side. It has been said that there is nothing to show that *Philip Hammond* was dead, at the time the judgment against *Rezin* was rendered. If this be so, then the plea that the execu-

tors of *Philip* did not assent to the stay is not material, and the issue of course an immaterial one. The proof offered on the part of the plaintiff, was in support of the issue to the 4th plea, and should have been admitted, though it may have been inadmissible in support of the other issues; and if the county court erred in rejecting the prayer, this court cannot refuse to send the case back upon a speculation, that the plaintiff has no proof in support of the other issues. After the opinion of the court upon the 4th issue, which was fatal to the plaintiff's right to recover, he would not have been suffered to offer evidence in support of the other issues.

BUCHANAN, Ch. J., delivered the opinion of the court.

*Christopher L. Gantt*, it appears, on the 6th of January, 1819, gave his bond to *George and John Barber*, with *Matthias Hammond*, as his surety.

*Matthias Hammond* died, making *Rezin Hammond* his executor, who in September, 1819, gave a testamentary bond with *Philip Hammond* as one of his sureties, for the performance of his trust as executor.

On the 21st April, 1823, two suits were docketed, and judgments entered by confession in the *Anne Arundel* county court, with a stay of execution for three years in each case, in the name of *George Barber*, surviving obligee of *John Barber;* the first in order on the docket against *Christopher L. Gantt*, the principal obligor in the bond to *George and John Barber*, and the second for the same debt against *Rezin Hammond*, executor of *Matthias Hammond*, who was the surety of *Gantt*. These judgments were rendered on the first day of the term, and on the back of the declaration in each case is a memorandum to the clerk in these words; "*Mr. Green*, file this and enter judgment, with a stay of execution for three years." Signed, *J. Shaw*, for plaintiff, *J. N. Watkins*, for defendant, who were both attornies of that court.

*Philip Hammond,* who was the surety of *Rezin Hammond,* in his testamentary bond as the executor of *Matthias Hammond,* being dead, this suit is brought upon that bond, against the executors of *Philip Hammond,* of whom *Rezin* is one, to recover the amount of the judgment obtained against *Rezin* as the executor of *Matthias.*

The two judgments confessed to *George Barber,* surviving obligee of *John Barber,* the first by *Gantt,* on his bond of the 6th of January, 1819, and the second, for the amount of the said bond by *Rezin Hammond,* as the executor of *Matthias Hammond* the surety of *Gantt,* are set out in the bill of exception with the memorandum or direction to the clerk, written on the back of the declaration in each case, by the attornies of the respective parties, (who were the same persons in both cases,) to file the declaration and enter judgment with a stay of execution for three years.

There are *eight* pleas.  To the 6th and 7th there were replications, and demurrers to the replications, which were overruled by the court; and the questions presented by those demurrers not being brought up by the exception taken at the trial, they are not now properly before this court, though attempted to be raised in the argument by the counsel for the appellees.  Issues were joined on the *three* first pleas.

To the 4th, 5th, and 8th pleas there are replications, rejoinders and issues, making the 4th, 5th, and 6th issues. The 4th plea alleges, that the judgment against *Rezin Hammond,* as the executor of *Matthias Hammond,* was for a debt due from *Gantt,* for which *Matthias Hammond* was only the surety of *Gantt,* and sets out the judgment against *Gantt,* with the stay of execution for three years.   The replication to that plea alleges, that the stay of execution given to *Gantt,* was with the consent of *Rezin Hammond,* as executor of *Matthias Hammond,* and the rejoinder denies the consent of *Rezin Hammond.*

The 5th and 8th pleas are substantially the same, and set out and rely upon the judgment against *Rezin Hammond,*

as the executor of *Matthias*, and the stay of execution entered upon that judgment. The replications to these pleas allege, that the stay of execution given to *Rezin Hammond*, was with the consent of the appellees as the executors of *Philip Hamond*, and the rejoinders deny their consent.

The questions then presented to the jury upon the trial of those three issues, were on the first, whether the stay of execution entered upon the judgment against *Gantt*, was so entered with the consent of *Rezin Hammond*, as the executor of *Matthias;* and on the other two, whether the stay of execution entered upon the judgment against *Rezin Hammond*, as the executor of *Matthias*, was so entered with the consent of the appellees as executors of *Philip Hammond*.

The entry of the stay of execution on the judgment against *Gantt*, was a giving of time to him, which if done in the life-time of *Matthias Hammond*, his surety, without his knowledge and consent, would have operated as a discharge of *Matthias;* and being done after his death, if without the knowledge and consent of *Rezin Hammond*, his executor, it equally discharges *Rezin*, and consequently *Philip Hammond*, his surety in his testamentary bond, if living, and being dead, his executors as such, the appellees in this case. It was necessary therefore, for the appellant to sustain the 4th issue on his part, that is, that the time given to *Gantt*, by the entry on the docket of a stay of execution for three years upon the judgment against him, was with the consent of *Rezin Hammond*, as the executor of *Matthias*. To prove such assent, and whether the jury was at liberty to infer it or not, from the evidence in the record, was the question submitted to the court at the trial; and is the only question presented to us by the bill of exception : the prayer preferred to the court by the appellant's counsel being, for its *instruction to the jury, that from the facts stated, they might infer the consent of Rezin Hammond, to the stay being given to Gantt, as stated in the replication.* Not that they were *bound* to infer the consent

of *Rezin Hammond,* but *might* infer it. That is, that the jury might, or might not infer it, from the evidence submitted to them as the judges of the effect of that evidence;—which instruction the court refused to give.

The appellant had a right to have the jury instructed with reference to their proper sphere of action; to have them told what was legitimately within their province, as the triers of the issue submitted for their decision, and that is, what was asked; that they might understand their duty and know that they were at liberty to infer from the evidence before them, the fact that was put in issue, if they should be of opinion, that the evidence was such as to afford the just and rational inference of that fact: and we think that the court erred in refusing to give the instruction asked for.

The consent of *Rezin Hammond* to the stay being given to *Gantt,* as alleged in the replication, was as competent to be proved by circumstantial, as by positive evidence. The same in that particular, as any thing else that may be proved by circumstantial testimony. The circumstances relied upon for that purpose in this case, that the suits and judgments against *Gantt* and *Rezin Hammond,* as the executor of *Matthias,* the surety of *Gantt,* and the stay of execution entered upon each judgment were on the same day—that they were amicable proceedings—that they were in the same court, and for the same cause of action—that they stand together upon the docket, the latter immediately following the former in order—that the stay of execution in each case is for the same time—that the judgments were voluntarily confessed, and at the first term—that the attorney for *Gantt,* and the attorney for *Hammond* was the same person—that the gentleman who was the attorney for the appellant in the suit against *Gantt,* was also the appellant's attorney in the suit against *Hammond:* and that the order to the clerk written and signed by them, as the attornies for the respective parties, on the declaration in each case, to file it and enter judgment with a stay of execution

for three years is in the same words, as they tend to show a conventional arrangement between the parties, the result of their relative condition in respect to the cause of action, consummated through the agency of their respective attornies, who were the same in both cases, and must be presumed to have known the views of their respective clients, and to have done their duty towards them, were circumstances pertinent to, and tending to prove the issue on the part of the appellant, from which the jury, whose province. it was to weigh and balance the testimony, should have been left to infer, or not, the consent of *Hammond* to the stay of execution being given to *Gantt*, according as their judgment might direct.

If instead of an unqualified refusal to give the instruction prayed, which may have misled the jury, and induced the belief that they were not at liberty to infer the consent of *Hammond*, the court had informed them, that the whole case was before them upon the evidence, which it was for them to weigh, and that they might infer the consent of *Hammond*, or not, as they might, or might not believe such inference to be warranted by the evidence, or had instructed them in any form not calculated to mislead them one way or the other, but leaving them free and at large to weigh the testimony, and to make such inferences from it as they should believe it to warrant, such a direction would have been free from objection. But it seems to us that the unqualified refusal, in the presence and hearing of the jury, of the instruction asked for, if not equivalent to a direction that they were *not* at liberty to infer the consent of *Hammond*, or that the evidence was not of a character to justify that inference, was at least calculated to make one or the other impression upon their minds, and thus to mislead them.

It has been urged that as the finding of the jury, on the 5th and 8th issues, was in favor of the appellees, the judgment ought not to be reversed, and the case sent back under a *procedendo*, even although the court erred in refusing to

give the particular direction prayed, on the supposed ground, that the appellant cannot on another trial succeed against the defence relied upon in those issues, and therefore that he could gain nothing by the case being sent back, and would only be subjected to the costs of another trial. But we are not prepared to say from the state of the case as presented to us, that such would be the consequence.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**