## ADAMS *vs.* DAVIS.

1. A. and D. entered into a verbal contract, by which A. undertook to sell and deliver to D., at a certain time and place, fifty bales of cotton, and D. to pay him therefor ten cents per pound. About the time fixed on for the fulfillment of the contract, the parties agreed that the time of performance should be postponed to another named day, and that their contract should be reduced to writing, which, however, was never done. On the day last appointed, D. and the agent of A. met at the place designated for the delivery, when D. took the agent aside and said to him that A. ought to let him off from the contract, but the agent proceeded to tender him the cotton, which he refused to accept and pay for: *Held*—That in an action by A. for a breach of the contract, *the question*, whether the parties intended by the second agreement that the contract should be no longer binding, unless reduced to writing, or whether they intended merely that it should be reduced to writing, with the view of being mutually furnished with more certain evidence of what the contract was, is one of fact, and should be left to the determination of the jury.

2. The pleader need only state so much of a contract as shows the plaintiff's right to recover: He may state it according to its legal effect, and is not bound to state that which is merely matter of evidence.

Error to the Circuit Court of Macon. Tried before the Hon. J. J. Woodward.

The facts of this case are fully set out in the opinion of the court.

Cocke, for plaintiff in error.

Gunn and Rice, for defendant:

The charges asked were properly refused—not only because they are contrary to law, but because they are abstract. The first seeks to qualify the inducement to have the contract reduced to writing, without any evidence upon which to base such qualification, and further to make the intention of the parties, aside from the contract, and not the contract, the governing principle. The second charge attempts to deduce a conclusion as to waiver of one of the terms of the contract, adverse from the evidence, and further to submit a question of law to the consideration of the jury.

In declaring on a contract, the declaration must show a binding agreement between the parties, and a violation by the defendant; and if the promise of the plaintiff forms in part the inducement to the promise of the defendant, the plaintiff must aver and prove a readiness on his part. Jones v. Powell, 15 Ala. Rep. 824.

If in this case there was a contract between the parties, there is a variance between that disclosed in the pleadings and proof. Where a special agreement is declared on, the same must be proved as stated, and a variance will be fatal. Shepard v. Palmer, 5 Conn. 95; Bannell v. Tailor, 5 ib. 273; Hough v. Young, 1 Ham. 504; Malford v. Bower, 4 Halst. 315; Stanwood v. Scovell, 4 Pick. 422; Adams v. Bower, 4 Litt. 7; Simpkins v. Montgomery, 1 N. & M. 589.

A contract is a deliberate engagement between competent parties upon a legal consideration.—Story on Con. 1. There should be a reciprocal assent—the minds of the parties should agree.—Ib. 52. It must be mutual, and everything must be done which the stipulations required to be done.—Newland on Con. 152. If we apply the tests here laid down to the contract as set out in the bill of exceptions, then in fact no contract has been made; and until the same was reduced to writing, there was no contract between the parties; neither is there any averment on the part of the plaintiff of performance or an offer to perform. When, by the terms of a contract, acts are to be performed by each party, neither can maintain an action against the other, without performance or an offer to

perform; and when the same is required to be reduced to writing, or to be executed by both parties, it is imperative; until' the same has been done, each one having a right to stand by the terms and stipulations agreed upon. Hare v. Huntington, 3 Ship. 350; Stabler v. Cunman, 7 Gill & Johns. 284; Luey v. Bundy, 9 N. Hamp. 298; Eleasen v. Henshaw, 4 Wheat. 228; Tucker v. Word, 12 Johns. 190; Wood v. Edwards, 19 Johns. 212.

Where there are special and common counts in the declaration, and the special contract is proven, and evidence is given varying the special contract by the parties, plaintiff cannot recover upon either the special or common counts. Norris v. Durham, 9 Cow. 151.

The charges asked were properly refused, because *the contract supposed or admitted in those charges is not the contract set forth in either count of the declaration.* It was not a term of the contract declared on, that "*the whole contract should be reduced to writing.*" But this is a term or part of the contract proved and admitted in each of the charges asked. For this variance between the contract declared on and the contract embraced in the charges requested, these charges were rightly refused.

CHILTON, J.—This was an action of assumpsit brought by the plaintiff in error against the defendant, upon a contract alleged to have been entered into between them, by which the plaintiff agreed that he would deliver to the defendant, at the Rail Road Ware-house in Montgomery; fifty bales of ginned cotton of the plaintiff's first gathering and packing from his crop then growing, to be delivered by the first day of November then next (1847,) and that the defendant should then and there accept said cotton, and pay said the plaintiff therefor ten cents for each and every pound thereof.

The declaration contains three counts, the last of which was however abandoned upon the trial in the court below. The first count, after setting out the contract as above stated, and avering that the mutual promises of delivery of the cotton on the one hand, and the payment of the money on the other, formed the consideration to support the same, contains the further averment that afterwards the parties mutually agreed to postpone the time for the performance of the said contract from

the first of November 1847, until the fifteenth day of January 1848, but that in all other respects said original contract remained unaltered. The count then proceeds to aver the tender of the cotton and the ware-house receipts by the plaintiff to the defendant at the time and place last agreed on, and the defendant's refusal to accept the cotton and to pay for the same. The second count avers the agreement to deliver the cotton on the 15th January, without setting out the original contract, and alleges a similar tender of performance on the part of the plaintiff, and refusal on the part of the defendant, &c. Plea, *non-assumpsit.* Verdict and judgment for the defendant.

Upon the trial, the plaintiff took a bill of exceptions, by which it appears that he introduced evidence, tending to prove a contract made between the plaintiff and defendant in September or October 1847, by which the plaintiff agreed to sell and deliver to defendant, at the Rail Road Ware-house in Montgomery, by the 1st November 1847, fifty bales of cotton of the first picking and packing of his then growing crop, and said defendant, upon the delivery thereof, agreed to pay the plaintiff the sum of ten cents per pound therefor. It was also shown that about the time for the delivery of the cotton according to the terms of the above contract, the plaintiff and defendant had an interview, immediately after which they came before two persons, who were examined as witnesses in the court below, when the plaintiff observed that the time for the delivery of and payment for the cotton had been prolonged until the middle of January, to which the defendant assented. Plaintiff also said that he and defendant had agreed that their contract should be reduced to writing. The defendant asked who should draw up the writing. Plaintiff replied that Knox (one of the witnesses) should, and that defendant could sign it and leave it with him, Knox, and plaintiff would sign it on his return from Montgomery. Knox asked how the contract should be drawn up. Plaintiff replied—" state what the contract is,—fifty bales of my first picking to be delivered in Montgomery by the middle of January, and defendant to pay for it ten cents per pound." It appeared, however, that the agreement was never reduced to writing. The plaintiff also showed that he had, at the time last agreed on, viz. the 15th January

1848, fifty bales of his first picking and packing at the warehouse in Montgomery, as agreed upon ; that he sent his agent on said day to make delivery thereof to the defendant; that the defendant appeared in Montgomery on said day, and taking the agent aside, said to him, the plaintiff ought to let him off from the contract, but said agent in behalf of the plaintiff tendered to the defendant the fifty bales, as also the ware-house receipts therefor, and defendant refused to receive and pay for the same ; and that such cotton, on the 15th January 1848, was worth only about seven cents per pound. Thereupon, the plaintiff asked two charges to be given by the court to the jury, as follows :

1st. That if they believed from the evidence that there was a contract between the plaintiff and the defendant, by which the plaintiff was to deliver to the defendant, at the Rail Road Ware-house in Montgomery, fifty bales of cotton of his first picking and packing, by a certain time, and that afterwards the parties agreed to extend the time of delivery and payment to the 15th January 1848, and also agreed at the time of such extension that the whole contract should be reduced to writing, merely for the purpose of having more certain evidence of what the contract was, and not as a condition, without the performance of which the contract was to be inoperative, and if they should also believe that the plaintiff, on the 15th January 1848, tendered the cotton to the defendant and he refused to accept and pay for it,—then the plaintiff was entitled to recover.

2d. That if the jury should believe from the evidence that there was a contract between the parties, by which the plaintiff agreed to deliver to the defendant, at the Rail Road Ware-house in Montgomery, fifty bales of cotton of his first gathering and picking, at a certain time, and that afterwards the parties agreed to extend the time for the delivery of the cotton to the 15th January 1848, and also agreed at the time of such extension that the whole contract should be reduced to writing, but which writing was not executed as agreed on, and that said defendant afterwards, on the 15th January 1848, with a knowledge of the fact that the contract had not been reduced to writing as agreed on, acknowledged to the agent of the plaintiff the validity of the previous contract, that this might

be considered by the jury as a circumstance from which they might infer a waiver of that part of the agreement, that the contract should be reduced to writing, and that if the cotton was tendered on the 15th January 1848, and the defendant refused to accept and pay for it, then the plaintiff is entitled to recover.

These charges the court refused to give, and the plaintiff having duly excepted to such refusal, now assigns the same for error in this court.

There can be no doubt, but that if a contract was entered into, such as is described in each of the two first counts in the declaration, and the plaintiff has tendered a compliance on his part as stated, he is entitled to his action; since the law is settled that reciprocal promises, simultaneously made, to sell and deliver goods on the one side, and to pay for them on the other, are valid.—Story on Con. 82, § 12; 8 Johns. Rep. 304. This position is not gainsaid by the counsel, but they insist that this contract was not complete, since it was agreed that it should be reduced to writing, which was never done. The proof conduced to show that a valid contract for the sale and delivery of the cotton, on the 1st of November 1847, existed verbally at the time the parties agreed to postpone the time for performance to the 15th day of January 1848. After this agreement to postpone, the contract in legal effect became one for the delivery of the cotton and payment of the money on the day last stipulated, and might well be declared on as such. This the second count does. If it was a part of the contract that it should not operate until reduced to writing and signed by the parties, then it would be incomplete until the performance of the condition, upon which it was to take effect, and as it would remain incomplete until the condition was complied with, the parties respectively would retain until then the *locus penitentiæ*, and might abandon it, or refuse to complete it.

Whether, by the agreement of the parties, the contract was complete, or its consummation depended upon some subsequent act to be performed by them respectively, was, under the circumstances of this case, as presented by the record, a question of fact, which should have been left to the jury. Did they make a verbal contract for the sale and delivery of the cotton on the 1st November 1847? When the time for per-

forming that contract arrived, did they, without intending to abandon the previous contract, still adhere to it, but merely postpone the time for its performance? Did they intend that this verbal contract, so modified, should be obligatory and binding as a parol or verbal contract, or was it only to become operative upon the condition that it should be reduced to writing? In fine, was it merely designed by the agreement to reduce the contract to writing, that they might mutually furnish each other with more certain and permanent evidence of a subsisting valid verbal contract? These are questions of fact, dependent upon the intention of the parties, and not of legal construction. If this view be correct, it follows that the first prayer for instructions was strictly correct, and the charge should have been given: For it is very clear that if the agreement was complete without the writing, it was wholly unnecessary for the pleader to say anything of the promise to furnish the evidence of the contract, and which neither party had fulfilled; so that if the jury should find that the agreement to reduce to writing was not a condition upon which the contract was to become operative, but was designed as a matter of caution or convenience—furnishing evidence, as the charge prayed for assumes—then the facts proved would sustain the count; if they found for the plaintiff, the other facts stated in the charge, and the supposed variance between the declaration and the proof, would not exist. The pleader need only state so much of a contract as shows the plaintiff's right to recover; he may state it according to its legal effect, and is not bound to state that which is merely matter of evidence.—Blick v. Briggs, 6 Ala. Rep. 687; Brown v. Barnes, ib. 694; see also Allen v. Goff, 13 Verm. 148. So, in the case before us, if the agreement to reduce the contract to writing was not a condition upon which it was to be obligatory, then the averment of it would be wholly immaterial, and might properly be rejected as surplusage.

As the view we have taken of the law applicable to the first charge is decisive of the case in this court, it is unnecessary to notice the points raised upon the other, further than to state that although the statement made by the defendant to the agent of the plaintiff, that he ought to let him off from the contract, was a circumstance tending to show either that he did not

regard the promise to reduce the contract to writing, as a condition upon which its validity depended, or that constituting such condition, he had waived it, still it was for the jury to weigh it, and to attach to it such importance as in their opinion it deserved. The second charge seemed to place the evidence in a proper light before them.—6 G. & J. 157.

We do not think the charges were abstract, as insisted on by the defendant's counsel. The evidence was that the parties agreed to reduce "*the contract to writing ;*" the charge asked for assumed, the evidence tended to show that the *whole* contract was to be afterwards put in writing. This is but a verbal criticism, and too refined to furnish any substantial ground for refusing the charge.

Judgment reversed and cause remanded.