Mr. Justice Hagner
delivered the opinion of the court.
This action was brought by Kendall against the defendants, who were sureties upon the following bond signed by Benjamin Thompson and themselves:
“ Know all men that we, Benjamin Thompson, and Wilson -Grice, and Dennis Wallace, of the District of Columbia, Are held and firmly bound unto John E. Kendall in the just ¡and full sum of $200, to the payment of which, &c., &c. Healed with our seals and dated the 14th day of December, A. D. 1878.
“ Whereas, in a suit instituted under the provisions of the Act of Congress, approved July 4,1864, entitled, £ an act to. regulate the proceedings in cases between landlords and tenants in the District of Columbia,’ before C. S. Bundy, And transferred to Sam. M. Wilcox, justice of the peace in and for the District of Columbia, by John E. Kendall, *280 against the said Benjamin Thompson, to recover possession of the premises described in the complaint filed in said suit,, the said defendant pleads title' in himself. Now the condition of the above obligation is such that if the said Benjamin Thompson shall pay to the said John E. Kendall all intervening damages and all reasonable intervening rent for said premises, and all costs adjudged against him in the Supreme Court of the District of Columbia, then the above-obligation to be null and void, otherwise to be and remain in full1 force and virtue in law.”
At the trial the plaintiff offered the bond and evidence?- and proved that in the suit described in the bond (Kendall vs. Thompson, at law, No. 20,317) in the circuit court, judgment had been entered for the plaintiff, the landlord, against Thompson, the tenant, for possession of the premises referred to, and also for $175 damages and intervening rent and costs; and that a fi. fa. had been issued upon the judgment and returned nulla bona, and there rested.
The defendant then offered to prove that on the 17th of-February, 1880, the said landlord and tenant suit was on the assignment for trial in the circuit court, and the parties were-ready with their witnesses, but it. was probable that said-case would not be reached for trial for several days; that-said Kendall and said Thompson on said day entered into' a parol agreement whereby in consideration that the said Thompson would confess judgment to the said Kendall for-the possession of the real estate and the sum of $175, as intervening rent and damages, he, the said Kendall, would stay execution on said judgment for the period of thirty days-from its date; that Thompson, in pursuance of said agreement, then and there confessed judgment for possession and. $175, and said Kendall did there and then cause tobe entered a stay of execution upon the judgment for thirty days; but the plaintiff objected to the admissibility of said testimony, and the court overruled the objection and allowed the witness to testify to the facts set out in said offer, and the witness did so testify.
The plaintiff excepted.
*281 And the defendants further proved that neither of them knew of this agreement or consented to the stay of execution.
The court instructed the jury that if they found from the evidence that the stay of execution was entered under such agreement without the knowledge, consent, or acquiescence of the defendants, the present action against them as sureties could not be sustained. The verdict was. for the defendants.
The propriety of these rulings is the matter for our determination.
The general principle is perfectly familiar, that if a creditor, by a binding agreement, made without the knowledge or consent of a surety, gives time to the principal debtor by enlarging the period of payment mentioned in the contract under which the surety has agreed to become bound, such enlargement of time discharges the surety from all further liability upon the contract. And a stay of execution upon a judgment against principal and surety, without the assent of the surety, is such a giving of time as discharges the surety. State, use of Barber, vs. Hammond, 6 G. & J., 168; Bank vs. Hoge, 6 Ohio, 17; Mayhew vs. Luckett, 2 Swanst., 193.
The engagement of the surety is not to be enlarged or varied without his consent. Any agreement to do so by the. creditor is an attempt on his part to make for the surety a new contract to which he never assented. The time of payment may be quite as important a consideration to the surety, as the amount' he has promised conditionally to pay. • He may have agreed to become responsible, because he then had in his possession property of the principal debtor sufficient to indemnify him against loss. "When the time fixed in the contract has passed without notification to him of the default of the principal,' he may naturally suppose his liability to be atan end, and thus release the means of reimbursement, to his ultimate loss, if the changed contract is subsequently enforced against him. Again, the surety has the right, on payment of the debt, to be subrogated to all the rights of the creditor, and to proceed at once to collect it from the principal; but *282 if the creditor has tied his own hands from proceeding promptly, by extending the time of collection, the hands of the surety will equally be bound; and before they are loosed, by the expiration of the extended credit, the principal debtor may have become insolvent and the right of subrogation rendered worthless.
It is also well settled that it is unimportant whether the extension given has actually proved prejudicial to the surety or not. The rule we have stated is quite independent of the event, and the fact that the extension granted promised to be beneficial to the surety would give no right to the creditor to change the terms of the contract without the knowledge or consent of the guarantor.
The plaintiff insists that the present case is not within the operation of these principles, because the alleged giving of time was not upon the bond sued on, but upon another indebtedness, ripened into judgment, to which tlje surety was no party.
The purpose in giving the bond was to secure the payment of “ all intervening damages and all reasonable intervening rent ” that might be adjudged against the principal obligor. The obligation to pay the judgment was the only liability created against the surety, and this was adopted into the bond. If that should be paid by the principal, the surety of course would be discharged. It would scarcely be gravely contended that the surety would remain bound if the creditor had formally released the principal from the judgment, out and out. Interference with the judgment in either of these respects, would certainly discharge the surety, and yet such would not be the case if the contention of the plaintiff were to be sustained, for it could equally be insisted with respect to these acts of the principal that they took place in a case to which the surety was ho party. The judgment was in fact incorporated in the bond, and whatever operated to release the judgment, in this respect, operated to exonerate the surety. Such a proposition as that contended for by the plaintiff has never been considered as a proper construction of the law and we have been referred to no authorities in its *283 support. It is not always easy to find decisions in opposition to clearly untenable positions, but we will refer to two cases where the point was met and overruled. In Smith vs. Sliddler, 3 Pittsburg Rep., 550, a suit was brought upon a bond, ■conditioned like that in the present case to secure the payment of a claim therein described, to which the surety to the bond was no party. The creditor gave a stay of execution ■of ninety days on the judgment recovered upon the cause of action designed to be secured by the bond, without the assent of the surety to the bond. The court held that the legal presumption wras the surety was prejudiced by the delay — that as the creditor, by giving the stay of execution had tied his own hands, he, by that act, disabled the surety from proceeding to enforce his right of subrogation, and having this changed the contract without authority, the surety stood discharged. To the same effect is the decision in Ren vs. Kirk, 18 Hunn, 210.
We think the rulings held were correct, and they are affirmed.