# MICHAEL P. JENNINGS *vs.* WM. PENDERGAST.

The facts that a testatrix was *ninety-six years* old when her will was executed, that by it she disinherited her only son, and grand-children, giving her whole estate to her son-in-law, who procured the will to be prepared by counsel, and that shortly before its execution her son was confined in jail upon the complaint of some person unknown, for an alleged assault upon her, where he remained for some months and was then discharged without trial, would, if not *rebutted*, be sufficient to sustain a *caveat* to the will.

But *all the attesting witnesses*, having testified *positively* to the *mental capacity* of the testatrix at the time of the execution of the will, and other witnesses having testified, some to her capacity and others to her imbecility, and the orphans court, before whom these witnesses *were examined* and the case *tried*, having *sustained the will*, their decision was affirmed.

APPEAL from the Orphans Court of Baltimore city.

*Caveat* by the appellant against probate of the will of Catharine Jennings, upon the ground that from extreme age and infirmity of body, she became insane and *non compos mentis*, and whilst in this condition, the appellee, her son-in-law, procured the execution of the will by her.

The will is dated the 7th of January 1853, the testatrix being at that time ninety-six years of age. By it she devised all her property of every description to the appellee, and appointed him sole executor. She died on the 4th of January 1855, leaving the appellant, her only son, and Margaret Pendergast, the wife of the appellee, her only surviving daughter, and eight grand-children, the children of two deceased daughters.

The insanity was denied by the appellee, and plenary proceedings being ordered, the case was tried before the orphans court.

The testimony on both sides is sufficiently indicated in the argument of counsel and the opinion of this court. The court below, being of opinion that at the time of executing the paper the testatrix was capable of making a valid will, passed an order dismissing the *caveat*, from which the caveator appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*T. Parkin Scott* for the appellant, argued:

That the will in controversy is unjust and unnatural, cutting off from all participation in the estate, not only the son of the deceased, but also, the children of her two deceased daughters. That the execution of this will was obtained by the appellee for his own advantage, from the deceased, when she was in the ninety-sixth year of her age, by fraud and misrepresentation, as shown by the testimony of several of the witnesses. That the deceased, when the will was signed, was imbecile, and *non compos mentis*, and incapable of executing a valid deed or contract, as shown by the thirteen witnesses upon

the part of the caveator, all of whom give their opinions of her mental incapacity founded upon facts; and to show that such a will, whose execution is thus obtained, is not valid, reference is made to the following authorities. *Story's Eq. sec.*, 238. 1 *Bland*, 377, *Mrs. Owing's case.* 5 *G. & J.*, 300, *Davis vs. Calvert.* 2 *Gill*, 84, *Brooke vs. Berry.* 2 *Phillimore*, 69, *Browning vs. Reane. Ibid*, 449, *Kinleside vs. Harrison.* 1 *Haggard*, 355, *Earl of Portsmouth's case.* 6 *Sergt. & Rawle.*, 55, *Patterson vs. Patterson.* 9 *B. Monroe*, 30, *Denton vs. Franklin.* 1 *Green's Ch. Rep.*, 84, *Lowe vs. Williamson.* 2 *Do.*, 635, *Goble vs. Grant.* 4 *Rawle*, 356, *Baker vs. Lewis.* 5 *Johns. Ch. Rep.* 158, *Van Alst vs. Hunter.* 3 *Md. Rep.*, 491, *Cramervs. Crumbaugh.*

*John Stewart* and *C. J. M. Gwinn*, for the appellee.

The question in this case is, whether the testatrix, Catharine Jennings, was of sound and disposing mind, and capable of making a valid deed or contract? No issues have been made up for a jury. In the plenary proceedings depositions have been taken and the testamentary capacity has been held by the orphans court to have existed, and the caveat dismissed. From this ruling of the orphans court an appeal has been taken, and this court must pass upon the facts as a jury, in order to determine whether the required testamentary capacity did or did not exist.

What rule of interpretation is to govern the court in dealing with the facts before it? The act of 1798, ch. 101, sub. ch. 1, sec. 3, requires that a person to make a valid will, or testament, must be "of sound and disposing mind, and capable of making a valid deed or contract." It has been supposed, that this rule requires a higher standard of testamentary capacity than was required by the common law. Its true interpretation seems to be this: that as wills and testaments concern property, the law requires, that the testator when he seeks to dispose of his property by will or testament, should be in that condition of understanding, at the time of making such disposition, which would have been required to make any deed or con-

tract into which he might have entered at the same time, valid or capable of enforcement against him. This is the true rule. To say that *more* intellectual capacity is required to make a contract than a will, and thus to seek the conclusion that the act of Assembly had in view some standard of capacity higher in reality than what is meant by a sound and disposing mind, is to involve the whole subject in absurdity. A testamentary disposition may be, to the last limit of the law, technical and complicated. A contract may be so simple, that it is within the comprehension of a child. All that our testamentary act means to say is, that if the testator was in such a condition of mind that any deed which he might have made would have been good against him, or *any* contract, however simple, have been enforced against him, he has testamentary capacity sufficient. Let us see what *contracts* are good. In 1 *Parson on Cont.*, 314, it is said, that courts of law as well as equity, afford relief to those who are of *unsound* mind. They endeavor to draw a line between *sanity* and *insanity*, but cannot distinguish between degrees of intelligence. Against the consequence of that *deficiency of intellect, which makes mistake easy but does not amount to unsound or disordered intellect*, even equity gives no relief, unless another party has made use of this want of intelligence to do a positive wrongful act. 3 *Peere Wms.*, 129, *Osmond vs. Fitzroy.* 1 *Ves. Jr.*, 19, *Lewis vs. Pead. Chitty on Cont.*, 139. 9 *Pick.* 212, *Farnam vs. Brooks. Story on Cont.*, sec. 37. In this case, it may be remarked here, that, there is no evidence looking to fraud or undue influence.

The low degree of intelligence required to enable a party to bind himself by a valid deed or contract, is shown by the law, as it stood in England, upon the subject of commissions of lunacy, prior to *Sir Edward Sugden's Statute*, 1 *W. & M.* Before that act the *fact* might be, that a person was *incapable of managing his affairs*, yet the right to dispose of his estate, either by deed or contract, could not have been taken from him, unless the jury found that he was *unsound in mind. Shelford on Lunacy*, 87.

Now, are there any facts in this case which show, that if this

testatrix had, at the date of her will, made a deed or contract, and survived, it would not have been enforced against her because of her *unsoundness of mind*, that contract not being for necessaries, not tainted with fraud, and not so far executed as to be incapable of recision? There is positive evidence to show her healthy condition of mind. The attesting witnesses to her will assert a positive opinion. They are allowed to give this opinion, because of the duty imposed on them to satisfy themselves of the condition of the mind of the testator. 7 *Gill*, 27, *Brooke vs. Townshend. Shelford on Lunacy*, 284, 286. The remainder of the witnesses for both sides give opinions—or opinions with opinions as a reason for an opinion,—and such testimony is inadmissible, unless they are connected with facts. *Shelford on Lunacy*, 279. 3 *Wash. C. C. Rep.*, 587, *Harrison vs. Rowan.* 8 *Mass.*, 371, *Hathorn vs. King.* 3 *Do.*, 330, *Poole vs. Richardson.* 7 *Sergt. & Rawle*, 94, *Rambler vs. Tyson.* 4 *Conn.*, 209, *Grant vs. Thompson.* 5 *Pick.*, 510, *Needham vs. Ide.* 29 *Eng. Law & Eq. Rep.*, 38, *Austen vs. Graham.* Tried by this test the testimony of many of the witnesses is of no value, and indeed, inadmissible.

The capacity of the testatrix, being an inference of law, it is not only not rebutted but sustained by the testimony. Her great age only requires, that the court should look narrowly into the facts of the case. 2 *Phillimore*, 449, *Kinleside vs. Harrison.* 5 *Johns. Ch. Rep.*, 158, *Van. Alst. vs. Hunter.* 2 *B. Monroe*, 75, *Watson vs. Watson.* No argument can be drawn from the preference she has shown for persons. 3 *Md. Rep.*, 491, *Cramer vs. Crumbaugh.* The testimony shows that the reason of the disposition of the property made by this will was kindness received from the beneficiary under it. There was even a stronger reason to operate against the caveator. She had just before the making of this will received ill treatment from him. Though, as *she* did not complain against him, she does not seem to have known that he was in jail.

On the facts, therefore, and for the reasons given, we insist upon an affirmance of the order appealed from.

Jennings *vs.* Pendergast.

Le Grand, C. J., delivered the opinion of this court.

We confess we have had great difficulty in coming to a conclusion in this case. The testatrix was ninety-six years of age at the time of the execution of the will in contest. This circumstance standing alone is of great weight, and although not, *per se*, conclusive, yet goes far, when the common history of humanity is considered, to induce the belief that the party attaining so advanced an age must be much weakened in mind, if not reduced to that state which the books designate as fatuity. In the case before us the deductions to be made from the fact of extreme old age are strengthened by the peculiar character of the will; it disinherits the only son of the testatrix and eight grand-children, the offspring of two deceased daughters. It makes, in the first instance, none of the blood of the testatrix the object of her bounty, but gives it all to her son-in-law, the appellee, to the exclusion of his wife, her daughter. When is added to these facts the additional one, that a few days before the making of the will, the appellant and only son of the testatrix was confined in jail, on the complaint of some unknown person, for an alleged assault on her, and there remained for some months, and then discharged without trial; and also, that the appellee, the sole beneficiary under the will, procured its preparation by counsel, the case is certainly surrounded with great suspicion. Did it rest entirely on these facts we would not hesitate to reverse the order of the orphans court. But the conclusions to be drawn from them are rebutted by very positive testimony as to the mental condition of the testatrix at the time of the execution of the will. All the attesting witnesses state her to have been of sound capacity; one of them, Mr. Whyte, the draftsman of the will testifies, he carefully and slowly read the will to her, and she said it was all right, and that he had not *"a doubt upon the face of the earth but that the testatrix was of sound mind and memory."* Nine other witness give the opinion, she was of sound mind at the date of her will, although sometime prior to her death, which occurred two years thereafter, she became childish and imbecile. These witnesses are unknown to this court, as are, also, those who prove her imbecility.

The credit to be attached to their evidence, in some degree, would depend upon their appearance, and their manner of giving it. We have been deprived of this advantage; the orphans court enjoyed it, and we cannot be insensible to the value of the conclusions which it enabled them to derive from it. All cases like the present, we think, ought to be pronounced upon by a jury. They would·see the witnesses and be the better able to estimate the amount of credit which ought to be awarded to the testimony of each.

Repeating, were it not for the positive evidence of Mr. Whyte, and others, that we would hold the testatrix to have been incompetent at the time to have made a valid will, and the suspicions surrounding the transaction, yet we cannot feel ourselves justified in reversing the order of the orphans court. ·

*Order affirmed but without costs.*