CALEB S. MALTBY, surviving partner of HOLT
    & MALTBY, vs. THE NORTHWESTERN VIR-
    GINIA RAIL ROAD COMPANY.

The fact that a *particular shipment*, made by a firm, was the result of an
    antecedent private agreement between the partners, does not affect the
    responsibility of the firm to the public, nor the rights of the plaintiff,
    having had no notice thereof, who is suing the firm on a contract made
    by one of the partners in the name of the firm.

The *main* business of a general partnership was the catching, packing,
    transportation and selling of oysters to western country, but it was
    proved that the partners formerly owned a line of wagons, that they pur-
    chased, held and sold real estate in their joint names, owned vessels
    which they employed in the coasting trade, and subscribed for and pur-
    chased and sold stock in railroad and other companies.   HELD:

That, from this evidence, it was competent for the jury to find that a par-
    ticular subscription for stock in a railroad company, made by one part-
    ner in the name of the firm, was *within the scope of the partnership and in
    the course of its business.*

Under the limitations of a special partnership, one partner has no power
    to exceed them in his dealings, and if the party with whom he deals has
    . knowledge of the nature of the partnership, he is estopped from holding
    . the other liable on such a contract.

Where the transaction is *wholly unconnected* with and beyond the scope of
    the partnership, the firm is *not bound by any contract of a single part-
    ner*, though the party implicitly trusted on the credit of the firm.

But each partner is the accredited agent of the rest, whether they be ac-
    tive, nominal or dormant, and may transfer, pledge, exchange or dispose
    of the partnership property and effects for any purposes *within the scope
    . of the partnership and in the course of its business.*

As a general rule, strict compliance with its charter, as to organization,
    must be shown by a corporation seeking to enforce payment of subscrip-
    tions to its stock, but in some cases compliance will be presumed and in
    others it may be waived.

Payment of instalments on a subscription to its stock is a sufficient recog-
    nition of the legal existence and organization of a corporation, by the
    subscriber so paying, to enable it to recover the remaining instalments
    from him.

A prayer, that upon certain facts being found by them, the plaintiff is en-
    titled to recover, "unless the jury shall find that *the subscription*, to re-
    cover which this suit was brought, was an individual undertaking of one
    of the partners," &c., is erroneous in *assuming the fact of the subscrip-
    tion*, instead of leaving it to be found by the jury.

Maltby *vs.* Northwestern Va. Rail Road Co.

In an action, by a corporation, to recover subscriptions to its stock, an instruction that upon the finding of certain facts, the plaintiff is entitled to recover, but *omitting the material facts* of the proceedings of the corporation calling for the instalments and notice to the defendant of these calls, is erroneous; no matter how clear the evidence may have been to prove these omitted facts, it was necessary for the jury to pass upon it.

A prayer, that if the jury found certain facts enumerated therein, *"then there was sufficient evidence of a subscription,"* &c., is erroneous; it was calculated to mislead the jury, who might well have supposed the court was instructing them as to the *sufficiency in fact* of the evidence to prove the subscription.

It is competent for the court to pass upon the *legal sufficiency* of evidence to go to the jury as tending to prove a given fact, but it is an invasion of their province to instruct them that the evidence *is sufficient to prove the fact.*

The legal sufficiency of evidence is for the court to determine, but its weight, or its sufficiency to establish another fact sought to be inferred from it, is exclusively for the jury.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit,* brought on the 29th of December 1855, by the appellee against the appellant, as surviving partner of the firm of Holt & Maltby, to recover certain unpaid instalments of an alleged subscription for 150 shares of the capital stock of the Northwestern Virginia Rail Road Company, made in the name of the firm by the deceased partner, Dan. Holt, in his life time.    Plea *non assumpsit.*

*1st Exception.* This exception, with the evidence in the cause, is fully stated in the opinion of *Chief Justice Le Grand.*

*2nd Exception.* The plaintiff, after the evidence had been offered, asked the three following instructions to the jury:

1st. If the jury believe, from the evidence, that a partnership, in business, existed between Dan. Holt and Caleb S. Maltby, for some years prior to the subscription to the capital stock of the plaintiff, that has been offered in evidence, and existed when that subscription was made; and if the jury shall believe that, during that time, the said firm, under its partnership name, bought and sold stock in the Baltimore & Ohio Rail Road Company, subscribed to the capital stock of the York & Cumberland Company, purchased and exported

goods and merchandize to California, owned, in whole or in part, the barque Hebe, which was dispatched by them to California, owned also the schooner Swan, which was employed by them, from time to time, in the coasting coal trade, purchased real estate in the city of Baltimore, purchased and managed wagons and teams of horses for the transportation of oysters from Frederick city and from Cumberland, prior to the completion of the Baltimore and Ohio Rail Road, to the western country, purchased and owned real estate in the State of Virginia, all of which transactions were apparently on the joint account of the members of said firm, as partners under the name aforesaid; and if the jury shall further believe, that during the period of the transactions, above referred to, the said firm, by Dan. Holt aforesaid, subscribed, in the partnership name, to one hundred and fifty shares of the capital stock of the plaintiff, then there is evidence from which the jury may infer the authority of the said Holt to bind the said firm by such subscription, so far as liability to the plaintiff is concerned, in which event the plaintiff will be entitled to recover in this action any unpaid instalments due on said subscription, with interest from the dates when such instalments were payable, even though the jury should find that the principal business of the said firm was the catching, preparing and forwarding oysters from Baltimore to the western country.

2nd. If the jury shall find, from the evidence, that Dan. Holt and Caleb S. Maltby were partners, in Baltimore, at the time of the subscription, offered in evidence in this cause, in the business of catching, preparing and transporting oysters to the western country, and that, for the purpose of facilitating their said business, they owned, as partners, and managed teams of horses and wagons to forward their oysters, first from Frederick city and afterwards from Cumberland, westward, prior to the completion to Wheeling of the Baltimore & Ohio Railroad; and if the jury shall further believe that the rapid transportation of oysters westward was important, if not essential, to the business of the said firm, and that there was a rea-sonable expectation that said transportation would be facilitated

by the completion of the Northwestern Virginia Railroad and its western connections, then the said subscription came so far within the scope of the said partnership as to authorize the said Dan Holt to make the same on partnership account, and the plaintiff is entitled to recover in this action any unpaid instalments due on said subscription, with the interest from the dates when such instalments became payable.

3rd. This prayer, after stating the evidence offered by the plaintiff, consisting of its charter and those portions of the General Code of Virginia, referred to therein, the record book of the company, showing the proceedings of the meeting of the stockholders for the election of officers, and the organization of the company, the proceedings of the board of directors of the 4th of August 1851, authorizing the persons therein named to open books of subscription to the capital stock of the company, in the city of Baltimore, and the proceedings of said board calling for instalments upon the capital stock, the subscription upon which this suit is brought, and the receipts of the company given to Holt & Maltby, for the first and second instalments, which were paid in the life-time of Holt, concludes thus: "Whereupon, the plaintiff prays the court to instruct the jury, that if they found the above facts, then there is sufficient evidence of a subscription of one hundred and fifty shares to the capital stock of the Northwestern Virginia Railroad Company, in the name of Holt & Maltby, to bind the party or parties legally responsible therefor."

The defendant then offered nine prayers, as follows:

1st. That the paper offered in evidence by the plaintiff, and admitted by the defendant to have been signed by the late Dan. Holt, in the name of Holt & Maltby, is not, *per se,* a complete and effectual subscription for 150 shares of the capital stock of the plaintiff, even if the jury should find, from the evidence, that the same was signed by said Holt with the knowledge and assent of the defendant.

2nd. That under the provision of the Act of incorporation, offered in evidence by the plaintiff, and under the provisions of the code of Virginia, prescribing general regulations for

the incorporation of railroad companies, also offered in evidence by the plaintiff, the plaintiff is not entitled to recover in this case, unless, in fact, books were opened for subscriptions to the capital stock of the plaintiff, in Clarksburgh, under the direction of the commissioners named in said Act, not less than three in number, or at some other place designated in that behalf, by at least three of the said commissioners named in said Act, and that the burden of proof is on the plaintiff to show that books of subscription to the capital stock were so opened.

3rd. That there is no evidence in the cause from which the jury can find, that books of subscription to the stock were so opened as specified in the defendant's second prayer.

4th. That if the jury shall find, from the evidence in the cause, that the signature, mentioned in the defendant's first prayer, was procured by an individual who went about soliciting subscriptions, then such signature was not a valid and binding subscription for stock, unless the jury shall find, from the evidence, that such individual was appointed or constituted an agent, with power to act separately as agent, to receive such subscription, by at least three of the commissioners named in the said Act of incorporation, or by the president and directors of the plaintiff, and that the burden is on the plaintiff to show that such individual was so appointed or constituted such agent.

5th. That, unless the jury find, as a fact, that a subscription for stock was made, in the name of Holt & Maltby, by some person acting in that behalf, as attorney, under and in virtue of the paper offered in evidence by the plaintiff, and was so made in the lifetime of the said Dan. Holt, then the said firm of Holt & Maltby, were not constituted, and did not become, by virtue of said paper, subscribers for the shares of the stock of said company, affixed to the name of Holt & Maltby, in said paper.

6th. That unless the jury shall find, as a fact, that at least 3000 shares of the capital stock of the plaintiff were actually subscribed, in a book or books of subscription opened by said commissioners named in said Act of incorporation, or by

Maltby *vs.* Northwestern Va. Rail Road Co.

at least three of the said commissioners, before the instalments, demanded in this suit, were called for, then the said instalments were not lawfully demanded and cannot be recovered in this suit, and that the burden is on the plaintiff to show that such number of shares were actually so subscribed before said instalments were called for.

7th. If the jury shall find from the evidence in this cause, that the defendant was absent at the time the subscription was made by the late Dan. Holt, to the paper offered in evidence by the plaintiff, and that he did not assent to the making of said subscription before, or at the time the same was made, or since, and had no knowledge that the same was made, until after the decease of the said Dan. Holt, and that the defendant had no knowledge of the respective payments of $375 and $1500, appearing to have been made, respectively, on the 16th of December 1852, and the 8th of January 1853, and that he never assented to the said payments, or either of them, and that as soon as he knew of said subscription, and of the said payments, the defendant, on the day of its date, addressed and delivered to the administrators of said Dan. Holt, the letter dated the 11th of December 1854, which has been offered in evidence by the defendant, and that he, at all times, refused to recognize the said subscription as binding on the said firm, then the defendant is not estopped from denying his liability in this action upon the issue joined in this case.

8th. That even if the jury shall find, from the evidence in the cause, that the signature of the name of Holt & Maltby was made by Dan. Holt in his life-time, and that, at the time of making of such signature, the said Holt and the defendant, Maltby, were engaged in business in the city of Baltimore, in the gathering, pickling and vending of oysters, and also in certain other branches of business, but that the business of subscribing for stocks in Virginia or other railroads was not a part of the ordinary or authorized business of their said partnership, the said signature is not binding on the defendant, unless the jury shall find that the same was made by the authority of the defendant, or with his previous or subsequent assent.

9th. That unless the jury shall find, from the evidence in the cause, that a notice or notices was or were given to the firm of Holt & Maltby, or to the defendant, as surviving partner, of the calls, made by virtue of the resolution offered in evidence in this case, by the plaintiff, and dated the 3rd of July 1854, (in case they shall find that such resolution was passed,) then the present suit for the recovery of such instalments cannot be maintained; and that the letter of the defendant, dated the 11th of December 1854, offered in evidence by the defendant, is not legal and competent evidence to prove such notice or notices, and that the notices in the Patriot and the American, offered in evidence by the plaintiff, under the respective dates of August 11th, 1854, and October 3rd, 1854, are not sufficient evidence of such notice or notices.

The court (LEE, J.) rejected the *first* and *second*, and granted the *third*, prayers of the plaintiff, and granted the *first*, and rejected all the other prayers of the defendant, but granted his *seventh* prayer with this modification: "Unless the jury shall believe, from the facts set forth in the plaintiff's first prayer, that the subscription in question was authorized by the scope of the partnership existing between the said Holt & Maltby." The court also gave the following instruction to the jury:

"If the jury shall find, from the evidence, the facts set forth in the plaintiff's first prayer, and that the buying and selling and trading of the firm of Holt & Maltby, therein referred to, were, under the circumstances of this case, partnership transactions, out of which profits and losses were to be realized or borne by the said Maltby & Holt, as co-partners, and were within the scope and purposes of their partnership, and for the promotion and benefit thereof, then the plaintiff is entitled to recover, unless the jury shall find that the subscription to the stock of the Northwestern Virginia Railroad Company, to recover which this suit is brought, was an individual undertaking of Holt, and for his advantage alone, and was never recognized, or acquiesced in, or approved by, the said Maltby, during the life-time of the said Holt."

The defendant excepted to the granting of the plaintiff's *third* prayer, to the rejection of his prayers which were refused, to the granting of his *seventh* prayer as modified by the court, to the modification of said prayer as offered, and to the instruction given by the court.

The verdict was in favor of the plaintiff, for $6793.91, damages and costs, and from the judgment thereon the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. Schley,* for the the appellant, argued:

1st. The first exception is well taken. The evidence had shown that the oyster business was the proper business of the partnership, and the effect on the part of the plaintiff was to show by proof of particular transactions in the partnership name, or on the partnership account, that the firm of Holt & Maltby was engaged in a miscellaneous business, so as to make the act of Holt, in agreeing, in the name of the firm, to take stock of the plaintiff, binding on his partner. One of these particular transactions was a shipment to California in 1848 or 1849. Now, if the defendant had been permitted to show that such shipment was the result of a special agreement in that behalf, it would have been evidence tending to rebut the the presumption of the right of either partner of his individual volition, to embark the partnership in transactions outside of the proper business of the partnership. A special venture on joint account, by special agreement between partners, would negative and thus disprove the right of one of the parties to embark in an outside transaction without the previous consent of the other. *4 H. & McH.,* 350, *Brown vs. Duncanson & Ray.* 2 *H. & J.,* 396, *Bryden vs. Taylor.* 6 *Md. Rep.,* 5 *Manning, Stimpson & Co. vs. Hays.* 4 *Md. Rep.,* 283, *Thurston vs. Lloyd.* 19 *Johns.,* 154, *Foot vs. Sabin.* 22 *Penn. State Rep.,* 80, *Cooper vs. McClurkan. Levi on Merc. Law,* 139 to 144. 1 *Bos. & Pull.,* 539, *Bolton vs. Puller.*

2nd.   In granting the plaintiff's third prayer, the court decided not merely that the facts forming the hypothesis of that prayer, if found by the jury, furnished *evidence* of a subscription by the firm of Holt & Maltby, but *sufficient* evidence of that fact.   Now, the incorporation of the plaintiff, the proceedings of its board of directors, the calls for instalments, the payment of these instalments in the life time of Holt, and the giving of receipts for such payment, did not establish, *as matter of law*, the liability of the defendant, inasmuch as it was admitted that the defendant was not in Baltimore when such alleged subscription was made, nor when said payments were made; and it was further admitted that the defendant as soon as called on for said subscription, refused to acknowledge it as binding on the firm, and has ever since denied its validity.   The prayer ought to have left it to the jury either to find that Holt, in making such subscription, was acting within the scope of the business of the partnership, or that he acted, in making it, with the consent of his partner, or that the defendant, *with knowledge*, subsequently ratified his act by acquiescence or otherwise.   Again, the conclusion of the prayer, that if the jury found the facts stated in it, there is sufficient evidence of a subscription to bind *"the party, or parties, legally responsible therefor,"* without stating *who* were bound, makes the whole prayer a mere *abstraction*, and, therefore, calculated to mislead the jury.   Besides these objections, the prayer does not embody, as a part of its hypothesis to be found by the jury, that the subscription was, *in fact*, made by Holt in the name of Holt & Maltby, but *assumes* that material fact; and it also assumes, as matter of law, the invalidity of all the several objections raised by the prayers of the defendant in relation to the alleged subscription.

3rd.   The defendant's second, third and fourth prayers deny that an effectual subscription was made.   They are based on the express provisions of the Code of Virginia, prescribing general regulations for the incorporation of railroad companies, and on the theory that exact compliance with those regulations was a condition precedent to the legal incorporation

of the plaintiff. If the matter was material, the third prayer ought to have been granted, as there was certainly no evidence from which the fact could have been found. The fourth prayer stands on the proposition that a complete subscription is a contract, and therefore it requires the assent of the company to the subscription, if made in fact, in order to the perfection of the contract, otherwise there would not be any privity of contract. In support of the positions contained in these prayers, see 2 *H. & G.*, 478, *Agnew vs. Bank of Gettysburg;* 13 *Illinois*, 504, *Burnet vs. Alton & Sangamon R. R. Co.;* 31 *Maine*, 470, *Kennebec & Portland R. R. Co. vs. Kendall;* 2 *Gray*, 277, *Stoneham Branch R. R Co. vs. Gould;* 39 *Maine*, 571, *Oldtown R. R. Co. vs. Veazie;* 18 *Barb.*, 298, *Troy & Boston R. R. Co. vs. Tibbits;* 22 *Eng. C L. Rep.*, 272, *Norwich & Lowestoft Nav. Co. vs. Theobald;* 14 *Eng. Law Eq. Rep.*, 386, *The Galvanized Iron Co. vs. Westeboy.*

4th. The defendant's fifth prayer ought to have been granted. The paper signed by Holt was not in and of itself *a subscription.* It is merely a power to subscribe and in its nature it was revocable, until and unless the power was exercised. It is preliminary to an intended *future* subscription by some attorney. But there was no donee of the power; it was and is in blank, and no one could validly exercise the power, and no one has done so. 18 *Barb.*, 310, *Troy & Boston R. R. Co. vs. Warren.*

5th. The defendant's sixth prayer affirms substantially the same legal proposition as his second prayer, but the hypothesis is more definitely and precisely stated.

6th. The seventh prayer of the defendant asked that he might not be estopped from *denying* his liability, leaving it open, of course, to the jury, upon *all* the evidence, to establish his liability if they should so find on the issue joined. The refusal of this prayer was tantamount to an instruction, that if a partnership of any kind existed, the act of Holt, in the partnership name, is absolutely conclusive on the defendant, even if the jury should find, as matter of fact, that this subscription was *outside* of the partnership business, and was

Maltby *vs.* Northwestern Va. Rail Road Co.

never assented to by the defendant, but was promptly disaffirmed by him. But the modification, whilst it conceded, as law, that if the subscription was not authorized by the scope of the partnership business, the defendant ought not to be estopped; yet it assumed, as true, the hypothesis of the plaintiff's first prayer, (thereby invading the province of the jury,) and left to the jury to decide (what properly was the office of *the court*) whether, from the facts set forth in the plaintiff's first prayer, the subscription was or was not authorized by the scope of the partnership existing between Holt & Maltby.

7th. The eighth prayer announced an obvious legal proposition. Surely a partner of a firm, engaged in buying and selling merchandize, cannot, without the knowledge or consent of the other partner, subscribe for stock in an Atlantic telegraph, in a line of steamers to Canton, or in a railroad company, in the partnership name or on the partnership account. The authorities cited under the first point abundantly sustain this position.

8th. The ninth prayer assumes that notice of calls is a necessary prerequisite to a right of action. The resolution of the 3rd of July 1854, required payment of the residue, in five instalments, of $6 each, payable on the 15th day of September, October, November and January then following, and one instalment of $7.50, to be paid on the 15th of February then following—the stock subscribed at Parkersburg and Weston to be paid to the banks, at these places respectively— at Clarksburg to B. Despard, Esq., and at Baltimore to the Merchants Bank in that city. Personal notice was necessary, and therefore, the notices in the American were not sufficient, nor is it even shown that the defendant was a subscriber to the American; nor was the letter of the 12th of December 1854, sufficient evidence of due notice of calls. 6 *Eng. Railway & Canal Cases,* 218.

9th. The instruction voluntarily given by the judge below was clearly wrong. Even if the "buying, selling and trading," mentioned in the plaintiff's first prayer, were partnership transactions, *non sequitur*, that the subscription to the

Maltby *vs.* Northwestern Va. Rail Road Co.

stock of the plaintiff was a partnership transaction; and even if it were so the direction that the plaintiff was, therefore, entitled to recover, unless, &c., (as stated in the instruction,) was wrong, because it excluded the question, whether calls were made, notice given, &c. But besides this, the instruction is radically defective in *assuming the fact* of the subscription, instead of leaving it to the jury to find it.

*John H. B. Latrobe,* for the appellee:

The questions involved in the instructions prayed for, are:

1st. Had the plaintiff a standing in court on the proof looking to organization ?

2nd. Was the subscription binding in the form in which it was made, admitting it to have been within the scope of the partnership ?

3rd. Assuming the sufficiency of the subscription, was it within the scope of the partnership?

Under one or the other of these heads the prayers on both sides will be found to arrange themselves.

1st. *Had the plaintiff a standing in court on the proof looking to its organization ?* The third prayer of the plaintiff, relied, as sufficient evidence of organization, upon the charter of the Northwestern Virginia Rail Road Company, and the proceedings of the meeting of the subscribers in conformity therewith. The defendant on the other hand, insisted that it was necessary to show that books of subscription were opened in conformity with the charter; that there was no evidence that such books were opened, and that it was essential in addition to show that 3000 shares were, in fact, subscribed for before the instalments were called in. But it is submitted that, in granting the prayers of the plaintiff and rejecting those of the defendant, on this point the court below did not err; because the evidence offered of the meeting of the stockholders and the election of officers is *prima facie* proof that all the previous steps required were taken. *Angell & Ames on Corp., sec.* 635, *and cases there cited.* 3 *Sergt. & Rawle,* 29, *Commonwealth vs. Woelper. Redfield on Railways,* 9, *and cases there cited.* 5 *H. & J.,* 122, 125,

*Hagerstown Rail Road Co. vs. Creeger.* 4 *Gill*, 437, *Smith, et al., vs. Erb.* But there is another question underlying this, which must, after all, determine it: that is, whether the subscription was within the scope of the partnership. If it was, then it does not lie in the mouth of the parties, or either of them, making or bound by it, to deny the valid organization of the other party to the contract. If the subscription was not within the partnership, then, so far as the present action is to be regarded, the question of the organization of the plaintiff is one of utter indifference. *Redfield on Railways*, 85. The payment of the instalments effectually estops the parties bound by the subscription from objecting to a defective organization.

2nd. *Was the subscription binding in the form in which it was made, admitting it to have been within the scope of the partnership?* The plaintiff's reliance here is upon the facts set forth hypothetically in its third prayer: 1st. The organization of the company. 2nd. The opening of subscription books in Baltimore. 3rd. The agreement signed, "Holt & Maltby, 150 shares." 4th. The call for instalments. 5th. The payment of the first two instalments. Finding these facts, the court held, that the jury must find that there was a subscription sufficient to bind the parties *legally responsible*. In this connection the defendant's first prayer was offered, which was that the agreement signed by "Holt & Maltby, 150 shares," was not, *per se*, a sufficient subscription under any circumstances. There is no antagonism here between the parties. The plaintiff's prayer did not rest upon the sufficiency of the agreement *per se*, but upon its sufficiency when taken in connection with the payment of two instalments under it. The granting of the defendant's first prayer did not, therefore, involve a finding for the defendant if the jury found, in addition, that the agreement was subsequently, in part, executed by the payment of the instalments. The fourth prayer of the defendant, in this connection, required the plaintiff to prove that the individual who obtained the particular subscription, was appointed to solicit subscriptions, by, at least, three of the commissioners named in the charter. This prayer was properly rejected, because: 1st. The organi-

zation of the company being proved, the adequacy of all prerequisites is to be presumed, and among these the proceedings to obtain subscriptions. 2nd. No matter how or by whom the subscription was obtained, the subsequent payment of the instalments, after the company was organized, was an affirmance of the agreement making it binding on the parties throughout. The fifth prayer of the defendant sought to invalidate the agreement, unless the subscription authorized by it was in fact made on the books of the company. This prayer was likewise rejected and properly; because, if the jury believed, that in pursuance of the agreement, the instalments were paid upon the shares of stock therein mentioned, there was such a recognition on both sides of the mutuality of the contract, as made it unnecessary that there should be an actual subscription on the books of the company. The possession by the company of the agreement, with the name of the attorney in blank, and the fact of its part execution being sufficient evidence of a subscription for the purposes of its charter.

3rd. *Assuming the sufficiency of the subscription, was it within the scope of the partnership?* The instruction on this point was given by the court itself, referring to certain facts set out in the plaintiff's first prayer. The instruction, with the facts, referred to, inserted as a part of it, reads thus: "If the jury shall find, from the evidence, that a partnership in business existed between Dan Holt and Caleb S. Maltby, in the city of Baltimore and elsewhere, under the name of Holt & Maltby, for some years prior to the subscription to the capital stock of the Northwestern Virginia Railroad Company, that has been offered in evidence, and existed when that subscription was made; and if the jury shall believe that, during that time, the said firm, under its partnership name, bought and sold stock in the Baltimore & Ohio Railroad Company, subscribed to the capital stock of the York & Cumberland Company, purchased and exported goods and merchandise to California, owned in whole or in part the barque Hebe, which was dispatched by them to California, owned, also, the schooner Swan, which was employed by them, from time

to time, in the coasting coal trade, purchased real estate in the city of Baltimore, purchased and managed wagons and teams of horses for the transportation of oysters from Frederick city and from Cumberland, prior to the completion of the Baltimore & Ohio Railroad, to the western country, purchased and owned real estate in the State of Virginia, all of which transactions were apparently on the joint account of the members of said firm as partners, under the name aforesaid, and if the jury shall further believe, that, during the period of the transactions above referred to, the said firm, by Dan Holt aforesaid, subscribed, in the partnership name, to one hundred and fifty shares of the capital stock of the North-western Virginia Railroad; and that the buying and selling and trading of the firm of Holt & Maltby, above referred to, were, under the circumstances of this case, partnership trans-actions, out of which profits and losses were to be realized or borne by the said Maltby & Holt, as co-partners, and were within the scope and purposes of their partnership, and for the promotion and benefit thereof, then the plaintiff is entitled to recover, unless the jury shall find that the subscription to the stock of the Northwestern Virginia Railroad Company, to recover which this suit is brought, was an individual undertaking by Holt, and for his advantage alone, and was never recognized, or acquiesced in, or approved by, the said Maltby, during the life-time of the said Holt.'' This instruc-tion raised the main question in the case—*a question of fact —the nature and extent of the partnership between Holt & Maltby*—which the court left to the jury in the *broadest manner*. Giving this instruction, the court necessarily re-jected the eighth and ninth prayers of the defendant and granted the seventh with a modification. The eighth prayer put it to the jury to say, that the ''business of subscribing for stocks in Virginia and other railroads, was not a part of the ordinary or authorized business of the said partnership,'' when they were to find a verdict for the defendant. Now, the jury may well have found that subscribing to Virginia or other railroads, was not a part of the ordinary or authorized business of the firm, and yet have found that the scope of its

business, as testified by its transactions generally, was so wide as to bring the subscriptions to such stock, when made, within it. Neither could the court grant the seventh prayer, without the modification. The prayer claimed a verdict for the defendant, on the hypothesis that Holt made the subscription and paid the instalments, and that Maltby knew of neither until after Holt's death, when he at once disavowed them. Now, in granting the prayer with the modification, the court in truth say, that these facts, if proved, would be enough for the exoneration of the defendant, *unless the subscription in question was authorized by the scope of the partnership existing between Holt & Maltby.* This is, of course, sound law, because the relation of partners being once established, in regard to the transaction, the ignorance by one of the acts of the other, is wholly immaterial. The defendant's ninth prayer puts it to the court to say, 1st. That notice to Holt & Maltby, of the call for the instalments, for which the action was brought, was necessary. 2nd. That the publications in the Patriot and American were not sufficient notice—neither is the fact, that the defendant, the surviving partner, enclosed to the administrators the very notices insisted on as necessary, and found by him in the office of the firm, in Baltimore. Now, admitting, *argumenti gratia,* that notice was necessary and that the newspaper notices were insufficient, there remains but one kind of notice to be given, and that is a special notice, sent to the subscriber's place of business; and the letter of the 11th of December 1854, is the best proof, furnished, too, by the defendant himself, that such special notice was given.

4th. With regard, now, to the exception to the court's ruling, refusing to permit a question to B. S. Holt on cross-examination. The scope of the inquiry, eliciting the cross-examination, was to prove the acts of the firm, *as they were apparent to the public,* for the purpose of justifying the plaintiff in receiving the subscription on which the action was brought; and, in this view, it was altogether immaterial to the issue, whether the shipment already proved by the witness to have been sent out on joint account, was made with

or without consultation with his partner, by one of the firm. The object was to show that the firm of Holt & Maltby did not confine their dealings to the catching, preparing and forwarding of oysters to the west, but that they bought and held, as a firm, real estate, subscribed to stock, conducted wagon lines, owned vessels—among them a coasting schooner and a brig, in the latter of which *the firm apparently* made shipments of butter, &c., to California—thus procuring for the firm a credit with the public, beyond the limits of the oyster business, and authorizing the plaintiff to receive, when made by Holt alone, the particular subscription when made in the name of the firm. See *Manning, et al., vs. Hays,* 6 *Md. Rep.,* 8. Under these circumstances, the court was right in ruling out the testimony in question. But, again, even were the court wrong the judgment will not be reversed, the appellant having received no injury from the ruling. That the Hebe was owned by the firm was not denied—that she went on a voyage to California, was not denied—and it would matter little whether the voyage was made on account of a stranger, or one of the partners, chartering the vessel for the voyage and paying freight to the firm which owned it— or whether the firm duly loaded her, relying on the profits of the voyage in lieu of freight. The ruling of the court, therefore, excluding the question referred to, can have worked no injury to the appellant. 2 *Md. Rep.,* 73, *Keener vs. Harrod & Brooke.* 4 *Md. Rep.,* 289, *Thurston vs. Lloyd.* "Assuming the instruction as an abstraction, still we cannot reverse the judgment, because the defendant was not prejudiced by it." 4 *Md. Rep.,* 426, 429, *Cross vs. Hall.* 6 *Md. Rep.,* 399, *Pratt vs. Johnson.* 9 *Gill,* 7, *Harker vs. Dement.*

For the reasons above stated, it is submitted, that the court was right in its rulings on the several prayers submitted to it, and that the prayers which were granted are not open to the technical objections to *their form,* in assuming facts or otherwise, to such an extent as to operate a reversal of the judgment.

LE GRAND, C. J., delivered the following opinion:

This action was brought to recover from the appellant, surviving partner of the firm of Holt & Maltby, certain unpaid instalments, claimed to be due on an alleged subscription for one hundred and fifty shares of the capital stock of the appellee, made, in the name of the firm, by the deceased partner, Dan Holt, in his life time.

The plaintiff, to sustain its case, offered in evidence the Act of Virginia, under which it claimed to be a corporation; and also the general railroad law of that State. In addition, it offered the proceedings of the meeting of the subscribers to the capital stock, on the 2nd day of August 1857, for the purpose of organizing the company, as recorded in the minute book of the company, together with the resolution of the president and directors, of August 4th, 1851, under which subscription books were directed to be opened in Baltimore, and a resolution of the 2nd of November 1852, calling for the first and second instalments, to be paid at the Mechanics Bank by Baltimore subscribers. The subscription on which the suit is brought is as follows:

"We, the subscribers, agree to take the number of shares of stock set opposite to our respective names, in the Northwestern Virginia Rail Road Company, and we hereby appoint ———— our attorney, to make the said subscription accordingly on the books of said company.

Holt & Maltby—one hundred and fifty shares, 150 shares."

It was then proved, that, during the life time of Dan Holt, who died in March 1853, the first and second instalments upon the above subscription were paid, the first of $375, on the 10th of December 1852, and the second of $1500, on the 8th day of January 1853. According to the receipts the payment of the instalments purported to be "from Holt & Maltby," on one hundred and fifty shares of the capital stock of the company, standing on its books in their names.

The resolutions of the appellee, of date July 3rd, 1854, calling for the remaining instalments, and the notices of the calls published in the "American" and "Patriot" newspapers, and also a letter from the defendant, dated 11th of

December 1854, enclosing the notices to the administrators of Mr. Holt, were read to the jury.

It was also proven by the plaintiff, that, whilst the *main* business of Holt & Maltby was the procuring, preparing and forwarding of oysters to the western country, yet, they did not confine themselves to it, but had formerly established and owned a line of wagons from Frederick westward, prior to the construction beyond Frederick of the Baltimore and Ohio Rail Road; that they purchased and held in their joint names valuable real estate in Baltimore, which, at the instance of the defendant, was divided by legal proceedings after the death of Mr. Holt; that they had a farm in common in Virginia, bordering on waters in which they planted oysters; that they owned vessels engaged in the oyster trade; that they purchased and owned a barque, in which they made a shipment of butter, dried applies, and the like, to California, in 1848 or 1849; that they owned a large schooner which they employed in the coasting trade; that they subscribed and paid for stock in the Northern Central Rail Road Company; that they purchased stock in the Baltimore and Ohio Rail Road Company, which they afterwards sold; and the account of the firm, on the books of the last named company, was offered to show the particulars of this transaction. It was admitted, by the plaintiff, that the defendant, Maltby, as soon as called on by the plaintiff on account of the subscription, refused to acknowledge it as binding on the firm, and has, at all times since, refused to acknowledge its validity in any way. And it was also proved, that in no entry on the journal, day-book, leger or check-book of the firm is the name of the plaintiff mentioned, and that there is no entry of any check on said book for the sum of $375, on the 10th day of December 1852, or at any other date; that the check-book under date of 7th of January 1853, shows a check for $1500, to H. & M., and on the 8th of January 1853, a check for $1500 to H. & M.; and it was also proved by the exhibition of the account of Dan Holt in the books or ledger of Holt & Maltby, that he is not charged at the date of January 8th, 1853, or at any other date, with the sum of

$1500. It was admitted that the defendant, Maltby, was not in Baltimore when the subscription was made, or when the payments, as shown by the receipts, were made, and that he did not return to Baltimore until after the death of Dan Holt. It was proven by the witness, Benjamin S. Holt, that the main business of Holt *&* Maltby was the oyster business, shipping them to the west, and then disposing of them; the same witness proved that the firm of Holt & Maltby purchased the Baltimore and Ohio Rail Road stock as an investment, and also their real estate as an investment of their partnership profits; and afterwards sold said stock, and that they made money out of their transactions in this stock. This is the substance of the testimony.

The defendant, by his counsel, then proposed to the witness, Holt, the following question, which was objected to and the objection sustained by the court:

"Mr. Holt, you have said that Holt & Maltby made a shipment to California, of butter, dried applies, lard and other articles, sometime in or about the year 1848 or 1849; you will please say, whether such shipment was made by either partner alone, without consultation with the other, or whether such shipment was made as the result of an antecedent agreement and assent of both parties?" The refusal of the court to allow this question to be put to the witness, constitutes the first exception.

I think the court properly disallowed the question. If the defendant had succeeded in proving that the shipment spoken of, was the result of an antecedent private agreement between the partners, that would not, looking to the other proof in the cause, have affected the responsibility of the firm to the public; and the rights of the plaintiff would not have been thereby impaired, there being no evidence given or offered to show that they had notice thereof.

The plaintiff offered *three* prayers, and the defendant *nine* prayers. Of the plaintiff's, the court rejected the *first* and *second* and granted the *third;* of the defendant's, it granted the *first* and rejected the remainder, but granted the *seventh* with a modification; and, also, of its *own motion,* gave an instruction to the jury.

A question underlying the whole case is, whether the evidence be sufficient to justify a jury in inferring that the particular transaction which is the basis of this case, was within the scope of the business of the firm of Holt & Maltby? The various transactions in which the partners embarked that were, in their nature, entirely distinct from their *main* business—the catching, packing, &c., of oysters—particularly those relating to the purchase and sale of real estate, and of internal improvement stocks, show, satisfactorily enough, that their business was not confined to dealing in oysters. The only evidence we have of the character of their co-partnership, consists of the transactions in which they were engaged. It is very evident, from the whole tenor of the evidence, that both Holt and Maltby had faith in each other, and that they had joined their capital and exertions in one general enterprize for weal or woe; in other words, that they made a common fund, enjoying its yields and sharing its losses. The evidence is abundantly ample to establish a co-partnership, embracing such a transaction as the one in dispute. There was nothing at all in the testimony from which the contrary could even have been conjectured, except it be that, it was proven that their *"main"* business was the oyster business. This circumstance surely ought not to control all the other proof on the point. The jury were well justified in believing that, the subscription to the stock of the plaintiff was as well authorized as had been the purchases of stock in other internal improvement companies, which were not only never repudiated, but the profits of which were availed of and enjoyed. There was no dissimilarity in the power employed in these cases; it was the same in all, and was well calculated to notify the world, that dealings in the stocks of railroad companies were within the terms of the co-partnership; indeed it distinctly conveyed that intelligence. There is no doubt, that under the limitations of a special partnership, one of the partners has not the power in his dealings to exceed them; and if the party, with whom the transaction is had, has knowledge of the nature of the partnership, he is estopped from holding the others liable on such contract.

And, also, "where the transaction is *wholly unconnected* with, and beyond the scope of, the partnership business, the firm would not be bound by any contract entered into by a single partner, although the party implicitly trusted on the credit of the firm." *Levi on Mercantile Law,* 143. On the other hand, each partner is to be taken as "the accredited agent of the rest, whether they be active, nominal or dormant, and has communicated to him all authorities necessary for carrying on the partnership, and all such as are usually exercised by partners in the business in which they are engaged. He is by law held to be *præpositus negotiis societatis,* or to possess a general mandate to transfer, pledge, exchange or dispose of the partnership property and effects, for any purposes within the scope of the partnership, *and in the course of its business;*" *Ibid.,* 139, and the authorities there cited. In the present case it was peculiarly the province of the jury to determine, whether or not the particular subject-matter embraced in this controversy was *within the scope of the partnership, and in the course of its business.* If they believed the evidence, they could not have found the fact otherwise than they did.

It is not contended that the mere attaching of the name of the firm to the subscription by Holt, was, of *itself,* independently of all other circumstances, sufficient to fix the liability of the firm. Whatever advantage the defendant could derive from the assertion of this proposition, he had by the court granting his first prayer. And by the granting of his seventh prayer, with a modification, the jury were required to find, that the subscription *"was authorized by the scope of the partnership existing between the said Holt & Maltby."* If it was so authorized, then, of course, the subscription was binding as *a subscription* of the firm. The instruction given by the Superior court, of its own motion, goes even farther than this. It required the jury to find, that the subscription was not an individual undertaking of Holt for his own advantage, but that it was recognized, acquiesced in and approved by Maltby, during the life time of Holt; it was greatly more than the defendant had the right to ask, or the court to

grant. These two instructions, so far as the powers of Holt, his action, and the concurrence of Maltby in the latter, were concerned, placed the case of the defendant before the jury in the most favorable light for him; and he has no cause of complaint against the ruling of the court in these particulars.

There is no doubt that, in general, a strict compliance must be shown with the provisions of the charter, and that, in this case, so much of the Code of Virginia, as is applicable, is made part of the Act of the plaintiff's incorporation. But, in some cases, a compliance will be presumed, and in others, it may be waived. Assuming the authority to make the subscription, and the fact of its having been made, the payment of instalments on it is a sufficient recognition of the legal existence and organization of the plaintiff. That the law will make presumptions in favor of the legality of the proceedings of corporations, is settled by the case of *The Hagerstown Turnpike Road Company vs. Creeger*, 5 *Harris & Johnson*, 123; see, also, *Commonwealth vs. Woelper and others*, 3 *Sergeant & Rawle*, 29.

The third prayer of the plaintiff was nothing more than a recapitulation of the testimony, deducing from it the liability of the "responsible" party or parties. If, in my judgment, there be any objection to the prayer, it is to be found in its inconclusiveness of sequence, and not elsewhere. It in fact decided nothing, farther than that, if the facts were found, the *proper* party or parties were responsible, without pointing out who were the parties.

BARTOL, J., delivered the opinion of this court.

A majority of this court are of opinion, that the ruling of the Superior court, in the first exception, ought to be affirmed, and they also concur in the general views of the case which are expressed in the opinion of the Chief Justice; but they think there was error in the last instruction given by the Superior court to the jury.

The formal objection to its phraseology, made by the appellant's counsel, that it assumes the fact of the subscription instead of leaving that to be found by the jury, it is consid-

Maltby *vs.* Northwestern Va. Rail Road Co.

ered is sustained by the well established practice in this State, and by numerous decisions of this court.

But the instruction is substantially defective, in entirely omitting material facts which were necessary to the maintenance of the action. These facts were the resolutions and action of the corporation calling for the instalments on the capital stock, and the notice to the defendant of the calls. However clear the evidence may have been to prove those facts, it was necessary for the jury to pass upon it. See 4 *H. & J.,* 517. 7 *H. & J.,* 291. 3 *Gill,* 31. 10 *Md. Rep.,* 346. There are many other cases to the same effect.

In the opinion of a majority of this court, the third prayer of the plaintiff was also erroneously granted. In it the jury were instructed, that if they found certain facts therein enumerated, "*then there was sufficient evidence of a subscription,*" &c. It is competent for the court to pass upon the *legal sufficiency* of evidence to go to the jury, as tending to prove a given fact; but it is an invasion of their province to instruct them, that the evidence *is sufficient to prove the fact.* The legal sufficiency of evidence is for the court to determine; but its weight, or its sufficiency, to establish another fact, sought to be inferred from it, is exclusively for the jury. *Cole vs. Hebb,* 7 *G. & J.,* 39, 40. The instruction was calculated to mislead the jury, who might well have supposed that the court was instructing them as to the *sufficiency in fact* of the evidence to prove the subscription. See *State, use of Barber, vs. Hammond's Ex'crs,* 6 *G. & J.,* 169, 170. *Grove vs. Brien,* 1 *Md. Rep.,* 438.

A majority of this court concur in affirming the action of the court below upon the defendant's prayers, but dissent from that upon the plaintiff's third prayer, and consider there was error in the court's instruction to the jury; the judgment must therefore be reversed.

*Judgment reversed and procedendo ordered.*

(Decided July 19th, 1860.)